63 P.(2d) 1049

**TELMAN v. GALLES.**

No. 4148.

Supreme Court of New Mexico.

Dec. 28, 1936.

John F. Simms and Augustus T. Seymour, both of Albuquerque, and Wilson & Watson, of Santa Fe, for appellant.

Rodey & Dickason, of Albuquerque, for appellee.

BRICE, Justice.

After considering appellant's motion for a rehearing herein, the original opinion was withdrawn and the following substituted:

From a decree in favor of the appellee (plaintiff below) for $1,200 upon a charge of fraud and deceit, the appellant (defendant below) has prosecuted this appeal.

It is alleged in the complaint that appellee made an offer in writing to purchase an automobile from the New Mexico Motor Corporation, of which appellant was president and principal stockholder, a copy of which is attached to the complaint. At the same time he delivered to the corporation his automobile to be sold for not less than $1,200, which amount was to be applied to the price of the new car to be selected by appellee. That his automobile was sold for $1,200. That subsequent to the making of the contract the New Mexico Motor Corporation had been placed in receivership by order of the district court of Bernalillo county, N. M., and all of the assets of the corporation sold to Galles Motor Corporation (of whom appellant is president and principal stockholder) for a price equal to all the claims filed and approved in the receivership case, and that the receiver had been discharged. That appellant promised and agreed to pay to appellee the amount of his claim against the New Mexico Motor Corporation if appellee would not file it with the receiver for allowance. That such promise was made with the intent to deceive and defraud the appellee, for appellant's own personal gain, in that appellant did not intend to fulfill it at the time it was made. That appellee relying upon such promise did not file his claim with the receiver, which he would have done but for appellant's fraudulent promise made for the purpose of keeping the amount of the claims against the receivership as low as possible so that appellant could profit personally as principal stockholder in a new corporation organized to take over the assets of the New Mexico Motor Corporation. That the assets of the old corporation were sufficient to pay appellee's claim in full if it had been filed. That by reason of the fraud and deceit of defendant and by reason of the representations made by defendant, which representations were made with the intent to deceive plaintiff and prevent him from filing his claim upon which promises and representations plaintiff relied, plaintiff has been damaged in the amount of $1,200.

The defense as alleged in the answer was to the effect that the motor corporation had offered to deliver to the appellee an automobile as specified in the contract, "and demanded that the plaintiff pay the balance due thereon, which the plaintiff failed and refused to do, and thereupon, the New Mexico Motor Corporation, after waiting more than ten days from and after notice to the plaintiff that the automobile was ready for delivery, canceled the plaintiff's order, and retained his deposit as liquidated damages in accordance with the terms and provisions of said contract." That thereafter the appellee had notified said corpora-

tion he would not claim any interest, right, or title *in such deposit;* that appellee knew the limitation of time within which claims could be presented against the receiver in question and without in any manner being deceived or misled by the appellant the appellee elected not to file his claim with the receiver, and as a result it was not presented to the court within the time allowed and was barred by the action of the court after the conclusion of the time within which claims might be presented.

At the close of the plaintiff's (appellee's) testimony at the trial in the district court, the defendant (appellant) moved the court for a dismissal upon the ground "that there has been no evidence introduced upon which this suit for fraud and deceit could be maintained." This motion was overruled, and appellant refusing to introduce testimony, decree was entered as stated.

The rule, which applies under such condition of the record, has been often stated by this court. The real facts may be different from those which bound the district court; but in making his motion to dismiss, appellant rested his case on the question of law, viz., considering only plaintiff's testimony together with all reasonable inferences that could be deduced therefrom, in a light most favorable to the plaintiff, had a case been made that would support a decree? The district court and this court are bound by the rule.

From the testimony so considered, we deduce the following facts: In May, 1931, the appellee entered into an agreement with the New Mexico Motor Corporation to purchase a La Salle or Cadillac automobile, and as a part of the purchase price delivered to that corporation his secondhand automobile which was accepted at $1,200. The appellee not being financially able to pay the balance of the consideration at the date agreed, the time for closing the transaction was extended until appellee should be able to pay the balance. The written contract provided, among other things: "This order is not binding upon you (referring to the New Mexico Motor Corporation) until accepted in writing signed by H. L. Galles, president." The order was never accepted in writing, but appellee's car was delivered to and accepted by the New Mexico Motor Corporation, sold by it for $1,200, and this money retained by it. The contract also provided: "In case the automobile cannot be delivered as specified, the deposit shall be returned to the undersigned, and thereupon all obligations hereunder shall cease. * * * In case the undersigned does not pay the balance of the full purchase price within 10 days after notice that the automobile is ready for delivery, you may cancel this order and retain the deposit as liquidated damages."

On the 4th day of May, 1933, the appellant filed a suit against the motor corporation, alleging in his complaint that he was its president and principal stockholder (in fact, his counsel stated in oral argument that he owned all the stock except qualifying shares for directors); that it was insolvent; and prayed for the appointment

of a receiver to wind up its affairs. To this action the corporation immediately filed an answer admitting the allegations of the complaint, and on the same day an order was entered appointing a receiver of that corporation's property. In the order it was provided that the 10th day of June, 1933, should be the limit of time within which creditors could present claims for allowance against such corporation. Before the time for filing claims had expired, appellant agreed to pay appellee's claim if appellee would not file it with the receiver. The appellee, relying on this agreement and believing appellant would pay the claim as promised, did not file it, with the result that it was barred by the order of the court, mentioned. Appellant told appellee he had stated to some federal officials that appellee had no claim to any of the assets of the receivership and gave as a reason for not wanting the claim filed that if it was filed it would "put me in a kind of bad position because I told the Government Revenue Officers you did not have anything coming as far as that claim was concerned." Stating further to appellee, "You don't have to file your claim with the receiver, I will take care of you myself." The assets of the corporation were sold at private sale to the appellant, the consideration being that he would pay all the claims allowed against the corporation and the expense of receivership.

The assets of the corporation were transferred to a corporation organized and dominated by appellant (in which he owned the majority, if not all, of the stock, probably the latter), and the receiver thereupon was discharged; after which appellant again stated he would take care of appellee's claim and thus redeem his promise; but later denied legal liability and refused payment. The inventory of the receivership showed assets of the corporation of a value in excess of $37,000, with approximately $25,000 debts; claims of $20,500 of which were filed and approved. Of approved claims, $18,500 were claimed by a bank, and these were bought by appellant for about $7,500; so that really the $37,000 in listed assets were taken over by appellant through the medium of a new corporation for about $10,000. About $14,000 of the bank's claim was listed as a disputed item, but the evidence does not indicate the nature of the dispute. Other facts and inferences will be mentioned in the opinion.

■ If appellee had a valid claim against the corporation, it was lost by reason of his failure to file it with the receiver; there being ample assets to take care of it.

The contract provided: "In case the automobile cannot be delivered as specified, the deposit shall be returned to the undersigned, (appellee) and thereupon all obligations hereunder shall cease."

It is a reasonable inference that when the corporation was placed in receivership for insolvency, it could not deliver the automobile, and therefore appellee's claim against the receiver, according to the terms of the contract, was the return of the $1,200.

■ Appellant suggested in his motion to dismiss that appellee's remedy was by suit on the appellant's *promise to pay the debt* of the New Mexico Motor Corporation, and not for fraud and deceit. We agree that this remedy was available to him, as the court would infer from the facts proved that the main object of appellant in making the agreement was to subserve a pecuniary or business purpose of his own, though incidentally it would have the effect of extinguishing the debt due appellee by the motor corporation. In such case the statute of frauds is not a defense. Davis v. Patrick, 141 U.S. 479, 12 S.Ct. 58, 35 L.Ed. 826; Rice v. Hardwick, 17 N.M. 73, 124 P. 800.

■ But an action for fraud and deceit was likewise available to him at his election; and while more difficult to establish, it was within his discretion to choose it as a remedy. Pomeroy's Code Remedies (5th Ed.) §§ 459 and 464; Wilson v. New U. S. Cattle-Ranch Co. (C.C.A.8th Cir.) 73 F. 994; Missouri Savings & Loan Co. v. Rice et al, (C.C.A.8th Cir.) 84 F. 131; Hobbs v. Smith, 27 Okl. 830, 115 P. 347, 34 L.R.A. (N.S.) 697; 1 C.J. title Actions, § 170, p. 1040.

Appellee's action is based upon the proposition that there was an actual fraudulent intent on the part of appellant to *not* pay the debt due him by the motor corporation at the time appellant promised to pay it. Such intent, if it existed, removed this case from the general rule that fraud must relate to a present or pre-existing fact and cannot ordinarily be predicated on unfulfilled promises or statements as to future events. The contentions of appellant, as stated in his original brief, are as follows:

"As stated in 51 A.L.R. 49, 'The general rule, which is supported by numerous decisions in almost all jurisdictions, is that fraud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events'. This text continues and at page 63 [of 51 A.L.R.] states a general exception to the aforesaid rule, as follows: 'According to the weight of authority, if the person making the promise or statement as to a future event is guilty of an actual fraudulent intent, and makes the promise or misrepresentation with the intention of deceiving and defrauding the other party, and accomplishes this result, to the latter's injury, fraud may, under many circumstances, be predicated thereon, notwithstanding the future nature of the representations.' In support of this general exception, cases are cited from the United States Supreme Court, from the courts of thirty-four states, and from Hawaii, including Witt v. Cuenod, 9 N.M. 143, 50 P. 328 (1897). Appellant subscribes to this general exception and does not contend for an existing minority rule to the effect that fraud may not be predicated in any case upon an unfulfilled promise.

"However, in the application of this exception to cases of particular kinds, there is a difference of degree which is noted at

page 131 of the foregoing text [51 A.L. R.] : 'Representations or promises as to payment of money are involved in many of the cases and, without attempting at this point to collect all of the cases of this kind, attention is called to the fact that this is a kind of promise to which especially the general rule that fraud may not ordinarily be predicated upon unfulfilled promises and representations as to future events has been regarded as applicable.' "

The contention, that the promise to pay money in the future with the present intent to *not* keep the promise is not actionable fraud, is, we believe, not supported by appellant's authorities. It is true it is said in Brooks v. Pitts et al., 24 Ga.App. 386, 100 S.E. 776, cited by appellant to support his contention: "Ordinarily the breach of a promise to perform some act in the future, *especially a promise to pay money, is not of and within itself,* sufficient to establish fraud in legal conception." But the reference is to the quantum of proof to establish the intent and not to any rule to the effect that such deceit is not actionable. This is shown by a decision of the same court in Donnelly Co. v. Milligan, 37 Ga. App. 530, 140 S.E. 918, in which it was held that the purchaser of merchandise on a credit made just prior to filing a petition in bankruptcy was evidence of an intent existing at the time of purchase to not pay the purchase price, though promised. Also see Donaldson v. Farwell, 93 U.S. 631, 23 L.Ed. 993.

We therefore hold if there is substantial evidence to prove that at the time appellant agreed to pay the debt due appellee by the New Mexico Motor Corporation, he had the present intention to not keep such promise, then the judgment of the district court must be affirmed; for acting on this promise and believing appellant's promise would be redeemed, appellee refused to file his claim; whereby his debt was barred by the order of the court and lost, unless appellant is responsible for his wrongful act. Blackburn v. Morrison et al., 29 Okl. 510, 118 P. 402, Ann.Cas. 1913A, 523; 12 R.C.L. title Fraud and Deceit, § 28. p. 261; 26 C.J. title Fraud, § 26, p. 1093; Foster v. Dwire, 51 N.D. 581, 199 N.W. 1017, 51 A.L.R. 21.

The intent with which an act is done is known only to the person who does it and can only be proved by circumstances unless he admits it himself. In this case appellant introduced no testimony. He did not testify as to his intent and he alone knew it. He got the benefit of the $1,200 rightfully appellee's and defends against this apparent dishonesty with the contention that his intent to deceive and defraud was not proved.

As we view the evidence, it clearly establishes all facts necessary to a recovery unless it is this fraudulent intent; and the circumstances of the whole transaction must be marshaled with a view of discovering what the appellant knew in that regard and kept within his breast.

Appellant, who owned practically all of the stock of the corporation, brought a suit against it and forced it into receivership; the corporation answered admitting the allegations of the complaint, and an order appointing a receiver was entered the same day the suit was filed, in which order an extremely short time was fixed for filing claims and some $4,500 of them, exclusive of appellee's, were not filed and therefore lost. If the record is to be the criterion, both parties to the proceeding were controlled by appellant. While not necessarily fraudulent, it gave him a decided advantage of unrepresented creditors. After making a compromise with a creditor holding large claims and after having induced the appellee not to file his claim, appellant secured an order of the court for a new corporation, which he organized for that purpose (and the majority, if not all, of the stock of which he owned), to take over the assets of the old corporation for the amount of the approved claims. He was thus interested in preventing appellee's claim from being filed, as it would necessarily have to be paid before the corporation's property could be transferred to the new corporation.

We do not know the object of this receivership, but from the result it could be reasonably inferred it was to reduce the liabilities of the corporation at the expense of its creditors. Appellant owned all of the stock of the corporation except the qualifying shares for directors, and inferentially he owned the stock of the new corporation organized to take over the assets of the old one. Their loss was his loss and their gain his gain. Forty-five hundred dollars of just claims, other than appellee's, were barred by the court's order limiting the time to file claims to about thirty-seven days. As we have seen, the $37,000 listed assets were purchased by appellant's new corporation for about $10,000, effecting a reduction in listed debits of about $15,000 exclusive of appellee's claim, which was not listed. This, it may be inferred, was the object of the receivership as no other appears in the record. Now if this reasoning is valid, it may be further inferred that this object included a defeat of appellee's or any other claim.

Appellant's answer denies that he agreed to pay such debt, or that he entered into the agreement sued on. Testimony of like character was held by this court in Anderson et al. v. Reed, 20 N.M. 202, 148 P. 502, 506, L.R.A.1916B, 862, sufficient to show a fraudulent intent. It is true that case involved a contract to care for an aged person, and in such cases fraudulent acts are construed more favorably to the injured person than in ordinary cases of deceit; but it may be assumed that if appellant as a defense denied the existence of the contract which the court found he made, after bringing this receivership proceedings to reduce its (or his) debts, he would testify that he had no intent at any time to pay it. This court in the Anderson Case, stated: "The theory of fraud, in the inception of the contract, in such a case will support a decree of cancellation,

where there is an inexcusable and intentional failure to perform, and the facts in the case show that the grantee never intended to perform the contract which the court found she entered into. She says that no such contract was ever made by her, and, this being true, we may reasonably assume that she never intended to perform or keep it."

We must infer that appellant intended to get possession of the assets of the corporation at the time he sued it, though apparently he had no ready means; that he knew if he could prevent the filing of appellee's claim for $1,200 the remainder of the claims presented and allowed (except the bank's claim, which the bank carried for him) amounted to only about $2,000, for the payment of which he was able to give a bond; that his representations prevented the filing of appellee's claim, which was the only one in the way of securing possession of the entire assets of the corporation without a cent's cash outlay.

It may be reasonably inferred that the promise was made, not as collateral to the original promise of the motor corporation, but for the benefit of appellant; that he was not interested in the payment of the debt except as it benefited his own schemes; that his object was to secure the assets of the corporation for his own benefit; and if he could do so by the promise to pay this debt and thereafter refuse to pay it, he would be $1,200 ahead.

 We know by stipulation he owned a majority of the stock in the pur-chasing corporation, and from the evidence it may be inferred that he alone controlled its affairs. These circumstances and inferences, coupled with the fact that he refused to pay the debt while admitting he owed it, might well have influenced the district court's decision, and were peculiarly matters to be considered by it. When a case depends upon the intent with which a party acted in a given matter, and he, the only one who knows it, refuses to enlighten the court, this may be considered along with the other facts and circumstances in arriving at such intent. We are not able to say as a matter of law that they are not sufficient to support the decree.

What we have stated disposes of the case as originally presented here, and all contentions save one presented in appellant's motion for a rehearing. That contention may be thus stated:

Assuming the evidence does establish that appellant promised appellee to "take care" of *his claim against the motor corporation,* such claim was not a money demand, but only a conditional contract to deliver an automobile upon payment of a balance due thereon; whereas, the appellee's suit was for the value of the deposit paid on the purchase price, conceded to be $1,200.

This defense was urged for the first time on motion for rehearing. The parties and the district court treated the action as one for a money demand. Appellant's motion for dismissal is, in part, as follows: "If counsel had a remedy, he should have sued Mr. Galles upon his contract to pay the debt of the New Mexico Motor Corporation."

The suggestion is made that Mr. Galles contracted *to pay the debt* of the New Mexico Motor Corporation, which could only be a money demand. In his original brief in this court appellant states: "It is at once apparent that the instant case falls in the class of *promises to pay* or loan money, concerning which the text makes the statement noted in the preceding paragraphs".

This court speaking through Mr. Justice Watson stated in Albuquerque Lumber Company v. Tomei et ux., 32 N.M. 5, 250 P. 21, 24: "They now advance a theory of the case not brought to the attention of the trial court. Such new theory we cannot consider. * * * Counsel now ask on what equitable principle appellant's lien could be cut off by a purchase of the vendee's interest by the vendors. The question is raised too late. * * * They cannot now prevail upon the different and inconsistent theory."

And in American Investment Company v. Lyons, 29 N.M. 1, 218 P. 183, 186, we stated: "It is the declared law of this state that parties cannot on appeal change their contentions, shift their positions, nor advance new and different theories from those made and advanceed upon the trial. We will review only the questions presented to the trial court."

■ Appellant cannot here mend his hold by shifting to a new theory of defense in a motion for rehearing.

■ Our review of the evidence, however, satisfied us that the theory upon which the case was tried below and presented here was correct. We have quoted from the contract to show that the deposit was to be returned to appellee if the motor corporation was not able to deliver the new automobile as agreed, and that it was a reasonable inference it could not so deliver it. We have further stated that appellant had agreed to pay appellee's claim upon condition that the former would not file it with the receiver for allowance. This we infer from the testimony. Appellant stated to appellee, "I will take care of you, don't file any claim"; also "I will take care of your claim." Appellee further testified: "And I said 'What are we going to do about it?' and he (appellant) said: 'You don't have to file your claim with the receivers and I will take care of you myself.' I said 'All right.'"

After the receivership was closed and appellant had possession of all of the corporation's property, he stated to appellee: "I don't have to pay you anything if I don't want to, I owe you but I don't have to pay you anything." The only theory upon which this statement would make sense is that appellant recognized he owed appellee the $1,200, but that he did not have to pay it. He spoke of it as a debt and not as the contract for the sale of an automobile. There is lack of clearness in the testimony, as well as in the pleadings, but there is sufficient upon which to base the decree.

It is to be regretted that such cases are not tried upon a full disclosure of the facts;

as entirely different inferences might be reached than where, as here, one party is entrenched behind a rule of law strongly favorable to him.

The judgment of the district court will be affirmed. It is so ordered.

HUDSPETH and ZINN, JJ., concur.

BICKLEY, Justice.

I concur in the result.

SADLER, Chief Justice (specially concurring).

I agree with the statement of legal principles applicable to this case as contained in the opinion written by Mr. Justice BRICE. One of the principles here pertinent is that a promise to pay money, accompanied by a present intent not to do so, will support an action of deceit where injury follows reliance on the promise. I do not understand appellant now to contend otherwise. What he does challenge, and vigorously, is sufficiency of the evidence to sustain a finding either that there was ever any such promise to pay money, or, if it be held there is such evidence, that it was made with the evil intent charged.

Although no express promise to pay is shown, viewing all the testimony and permissible inferences in the light most favorable to appellee, as must be done upon demurrer, or motion to dismiss treated as demurrer, it was within the proper sphere of the fact finder to characterize what was said as a promise to pay, however much one may feel a contrary inference more warranted. Proof of the making of such a promise was absolutely essential to appellee's action of deceit. He alleged it. Appellant's answer denied it. This denial, plus proof and finding of the promise, supports the inference of an intention not to keep it entertained at the time the promise was made. Anderson v. Reed, 20 N.M. 202, 148 P. 502, 506, L.R.A.1916B, 862; Texas Employers' Ins. Ass'n v. Knouff (Tex.Civ.App.) 297 S.W. 799, 804, reversed on other grounds (Tex.Com.App.) 7 S.W. (2d) 68. In Anderson v. Reed, supra, where fraud in the inception of the contract was involved, we said: "She says that no such contract was ever made by her, and this being true, we may reasonably assume that she never intended to perform or keep it."

In Texas Employers' Ins. Ass'n v. Knouff, supra, the court said: "The very fact that appellant's agent denied he made said agreement, in the face of the fact found by the jury that he did make it, is a strong circumstance tending to show he had no intention of carrying out the agreement which he in fact made."

I am unable to see in the receivership proceedings anything to support an inference of fraudulent intent on appellant's part in making the promise found by the jury to have been made. It is not claimed appellant initiated and conducted this necessarily expensive and complicated receivership of a corporation showing inventoried assets in excess of $37,000 as one step in a scheme to defraud appellee of $1,200. Such a contention would be absurd on its face.

Yet this conclusion seems essential to finding in the receivership proceedings evidence of evil intent not to pay as promised. Without the order there made, limiting the time for proving claims, no bar would have attached to appellee's claim. Without the bar the whole scheme fails. Did the latter initiate the proceedings to supply such a bar? If agreed such proceedings were not prosecuted with this end in view, then no unfair implication should rest upon the circumstances that the time for filing and proving claims was limited by court order as in ordinary cases of corporate receiverships, or that other proceedings and results usual in such receiverships transpired.

But, for the reasons given, I think the judgment of the trial court must stand. I therefore concur in its affirmance.