149 P.2d 535

PRIMUS v. CLARK.

No. 4768.

Supreme Court of New Mexico.

April 20, 1944.

Henry J. Hughes, of Santa Fe, for appellant.

George Remley, of Santa Fe, for appellee.

BRICE, Justice.

This suit was brought by plaintiff (appellant) to cancel a deed executed by her, conveying to defendant certain community real property, and for a division of the community property of the parties, who had been husband and wife.

The facts found by the trial court, material to a decision, are substantially as follows:

The plaintiff and defendant were married on January 14, 1919, and divorced on June 23, 1936. All of their property belonged to the community, and consisted of the following:

1. Real estate known as the "Jacona Ranch" situated near Santa Fe, New Mexico, of the value of between $35,000 and $45,000, the legal title to which was in plaintiff.

2. $1350 cash.

3. The household furniture, furnishings, fittings, draperies, china, silver, linens, rugs, blankets, books and other chattels and goods of art and adornment, and other property unnecessary to mention, all at the Jacona Ranch. There is no specific evidence of its value, but sufficient to satisfy us that it was worth several thousand dollars.

4. Some pieces of sculpture made by defendant, in the hands of eastern art dealers and art galleries for sale.

5. Farming implements, two mules, an auto-truck and a station wagon.

The community debts amounted to six or seven thousand dollars.

The parties became estranged and agreed that they would secure a divorce and divide their property. Thereafter the defendant interviewed his attorney regarding the matter, and suggested to plaintiff that they go to his attorney's office and initiate proceedings for a divorce and make a property settlement. This was followed by two visits to the attorney. The parties, without the aid or interference of attorneys, orally agreed to the following property settlement:

That the cash should be apportioned $1000 to plaintiff and $350 to defendant; that the plaintiff should convey to the defendant the Jacona Ranch subject to all community debts; that if the defendant should thereafter sell the Jacona Ranch or any part thereof he should pay to the plaintiff one-half of the net proceeds of such sale; in the event the defendant should die seized of the ranch prior to the death of plaintiff she should have an undivided one-half interest therein, but if plaintiff should predecease defendant then all her claim or interest in the ranch "should fail." It was further agreed that the defendant should retain as his own property such of the furnishings and personal property upon the ranch as would permit him to conduct it as what is known as a "Dude Ranch;" that plaintiff should have such items of personal property as the parties should thereafter agree upon.

Pursuant to this agreement, defendant's attorney prepared a deed to convey the real estate from plaintiff to defendant, which she executed, and the parties thereafter executed a written contract, prepared by defendant's attorney, as follows:

"This agreement, Made and entered into this 22nd day of June, A.D. 1936, by and between Allan Clark, party of the first part, and Margery Clark, his wife, party of the second part;

"That, whereas, the party of the first part, by warranty deed, dated this day, is the owner of a certain ranch and improvements, located at Pojoaque, New Mexico, which said property is described in that certain deed recorded in Book 10, of the Records of Deeds of Santa Fe County page 444; and,

"Whereas, the said Allan Clark and Margery Clark are making what is in the nature of a property settlement, prior to their divorce,

"Now, therefore, in consideration of certain cash moneys which have been divided between the parties by their mutual agreement, and for the consideration of One ($1.00) Dollar paid by the said Margery Clark to the said Allan Clark, the receipt of which is hereby acknowledged, the said Allan Clark agrees for this consideration, and for the other considerations hereinabove mentioned, that if at any time in the future he sells the Jacona Ranch, or any part thereof, he will account to the said Margery Clark for one-half (½) of the selling price Both parties understand, and specifically agree, that if in selling the ranch, or any part thereof, only a small down payment is made, then one-half (½) of that shall belong to and be the property of the said Margery Clark, and one-half (½) of deferred payments made to be credited to her, as hereinafter set out.

"It is understood and agreed, that the minimum value of the entire ranch as it stands at the time of the signing and ensealing of these presents is Eighteen Thousand Dollars ($18,000.00), but if any portion of the acreage were sold the said $18,000.00 would be reduced proportionately.

"It is further understood and agreed, that no lump sum of money is to be paid over to the said Margery Clark, and she and the said Allan Clark in case of a sale as aforesaid, shall be deposited to her credit in some good and solvent bank, with instructions to pay the same over to the said Margery Clark at the rate of One Hundred ($100.00) Dollars per month, and not otherwise.

In the event that the said Allan Clark never sells the Ranch during his lifetime, on his death the said Margery Clark shall be given an undivided one-half interest in the entire ranch.

Should the said Margery Clark predecease Allan Clark, party of the first part herein, then her interest in the said ranch fails.

"Allan B. Clark, Party of the First Part

"Margery Clark, Party of the Second Part."

It should be stated that the parties had agreed only to the execution of the deed with the expectation that the rights of plaintiff should rest in parol, but upon the insistence of a friend the oral agreement was reduced to writing.

With the exception of the $1000 cash received by the plaintiff she has received a few articles of personal property of negligible value, requested by her and delivered to her by the defendant. The plaintiff had knowledge of the nature, extent and value of the community property and of their indebtedness and of her community property rights under the law. The defendant made no misrepresentations of facts regarding the property, practiced no deceit upon her, exercised no duress, intimidation or undue influence, and the settlement was freely and voluntarily entered into by the plaintiff.

She had no legal advisor, and acted upon her own judgment. The defendant expended some $10,000 to $15,000 on improvements after the ranch was deeded to him, out of his personal earnings, which plaintiff knew he intended to expend and permitted him to do so without notice to him that she thereafter intended to claim a community interest therein.

More than four years elapsed between the execution of the deed and contract mentioned and the filing of plaintiff's complaint in this action, during which time the plaintiff "knew that each and every act of said defendant, both of omission and commission which, in plaintiff's complaint is alleged to be, or to constitute a fraud perpetrated upon her by said defendant, existed or had not been by defendant performed." On December 1, 1939, the defendant sold a portion of the Jacona Ranch and has failed to pay the plaintiff any part thereof, the amount of which was approximately $4600.

The trial court concluded that in such property settlement "no fraud, actual, presumptive or constructive was perpetrated upon the plaintiff;" that the plaintiff was guilty of laches and is estopped from prosecuting her cause of action; that plaintiff's cause of action was barred by the statute of limitations. This action was brought on May 20, 1941.

We are satisfied that the community estate was of a value in excess of $50,000, of which plaintiff received $1000. She cannot obtain any of the personal property except by mutual agreement. The real estate was conveyed outright, and her interest therein fails unless defendant should predecease her. Assuming that their life expectancies are equal, she may live to own a half interest in the property, but in the meantime the right to its use and the usufructs thereof are in the defendant. The value of such an interest is so precarious that it is negligible. Add to this the fact that the defendant was given outright all the personal property except the $1000 cash paid plaintiff, and that he has kept $4600 received from sale of a part of the ranch land, the whole transaction appears so shocking to the conscience that we are not disposed to let it stand, unless a cancellation of this un-

conscionable agreement would do violence to legal rights of the defendant.

Transactions between husband and wife are controlled by the following statute:

"Either husband or wife may enter into any engagement or transaction with the other, or with any other person respecting property, which either might, if unmarried; subject, in transactions between themselves, to the general rules of common law which control the actions of persons occupying confidential relations with each other." Sec. 65-206 N.M.Sts.1941.

Under the New Mexico community property law the plaintiff and defendant were vested with equal interest in the title to the property involved. In re Miller's Estate, 44 N.M. 214, 100 P.2d 908; Beals v. Ares, 25 N.M. 459, 185 P. 780.

This statute creates in law a fiduciary relationship between husband and wife that is not destroyed by an action of divorce. It was copied from the laws of California, and construed by this Court in Beals v. Ares, supra, in which we quoted with approval the following from Doleiver v. Doleiver, 94 Cal. 642, 30 P. 4:

"The plaintiff and defendant were husband and wife, and by virtue of that relation personal trust and confidence had been created between them, which imposed upon the defendant the obligation of exercising the highest good faith towards the plaintiff in any dealings between them, and precluded him from obtaining any advantage over her by means of any misrepresenta-tion, concealment, or adverse pressure. * * * This relation and the obligation arising from it were not destroyed by the mere fact that an action for divorce was pending between them. They were still husband and wife, and so long as that relation existed between them, the law would not permit any inquiry into the extent of the trust and confidence which is presumed to be placed by one in the other; nor can the husband, by bringing an action for divorce against his wife, divest himself of the obligations which are imposed upon him by virtue of such relation." [25 N.M. 459, 185 P. 783.]

We then stated:

"From this it will be seen that the relation of the parties was not altered by the fact that the husband was suing for divorce, and that he owed to the wife the same rights and duties existing by virtue of the marriage relation notwithstanding the contemplated divorce."

The question is so completely settled by Beals v. Ares, supra, that reference is made thereto for a full discussion of the question. The conclusion reached by this court in that case is stated as follows:

"In view of the foregoing authorities, the following propositions may be accepted without question:

"(1) That the transaction in question was presumptively fraudulent.

"(2) That the duty devolved upon the husband to show "(a) the payment of an adequate consideration, (b) full disclosure

by him as to the rights of the wife and the value and extent of the community property, and (c) that the wife had competent and independent advice in conferring the benefits upon her husband.

"As the appellee in the case at bar met no one of the foregoing requirements by his proof, it is unnecessary to set forth additional requirements, if such there are. The appellee not having met the burden which the law imposed upon him, the court should have found the issues for the appellant."

The rule is otherwise stated:

"Where a beneficiary enters into a transaction with his fiduciary relating to matters within the scope of the fiduciary relation, the transaction is voidable, unless

"(a) it is fair and reasonable, and

"(b) it assented to by all parties beneficially interested, with knowledge of their legal rights and of all relevant facts that the fiduciary knows or should know, and

"(c) these parties are of competent age and understanding and are not subjected to undue influence." Restatement of Law of Contracts, Sec. 498.

" * * * A purchase by a trustee from his cestui que trust, even for a fair price and without any undue advantage, or any other transaction between them by which the trustee obtains a benefit, is generally voidable, and will be set aside on behalf of the beneficiary; it is at least prima facie voidable upon the mere facts thus stated. There is, however, no imperative rule of equity that a transaction between the parties is necessarily, in every instance voidable. It is possible for the trustee to overcome the presumption of invalidity. If the trustee can show, by unimpeachable and convincing evidence, that the beneficiary, being sui juris, had full information and complete understanding of all the facts concerning the property and the transaction itself, and the person with whom he was dealing, and gave a perfectly free consent, and that the price paid was fair and adequate, and that he made to the beneficiary a perfectly honest and complete disclosure of all the knowledge or information concerning the property possessed by himself, or which he might, with reasonable diligence, have possessed, and that he has obtained no undue or inequitable advantage, and especially if it appears that the beneficiary acted in the transaction upon the independent information and advice of some intelligent third person, competent to give such advice, then the transaction will be sustained by a court of equity." Pomeroy's Equity Jurisprudence, 3rd Ed., Sec. 958.

It is the rule in this state that the wife under the circumstances shown must have independent counsel. Beals v. Ares, supra. The rule is stated in Peyton v. William C. Peyton Corp., 23 Del.Ch. 321, 7 A. 2d 737, 747, 123 A.L.R. 1482, as follows:

"So, the principle is well established that a person standing in a confidential relation towards another may not retain benefits conferred by his principal in a transaction

as to which competent independent advice is considered necessary, except upon a satisfactory showing that the principal had such advice in conferring the benefits. Wherever independent counsel would be of real assistance to the principal in deciding whether to enter into the transaction with his fiduciary, it is the latter's duty to advise his principal to seek such counsel; and where in the circumstances of the case independent advice is deemed to be indispensable, it is not enough that the fiduciary has urged his principal to obtain such advice; the transaction will be voidable, at the election of the principal, if independent advice was not, in fact, had."

The courts are not in accord on this question (annotations 123 A.L.R. 1505 et seq), but we are not inclined to depart from our holding on the question in Beals v. Ares, supra.

The finding of the trial court that appellant was informed of her legal rights is not contested. But even so that does not remove the legal presumption that the parties were not bargaining on an equal footing. We are not advised as to the urge that impelled, or reason that induced, the plaintiff to part with her property for a pittance, to her husband from whom she was parting forever; but the legal presumption of constructive fraud and undue influence arising from the relation of the parties and the grossly inadequate consideration paid to appellant, cannot be downed by a conclusion of the learned trial judge that it did not exist.

It is said that defendant's attorney suggested to plaintiff that she secure independent legal advice. Quite true, but in refusing she expressed complete confidence in defendant, and he should have dealt fairly with her, or not at all. The strained relations of the parties and her financial stress were such that an intentional gift of the property by her to defendant could not be considered for a moment. No one could doubt but that if she had had independent legal advice her attorney would have insisted upon a fair settlement and that she would have been guided thereby. The deed, contract and oral agreements were voidable, subject to cancellation at plaintiff's election.

The defendant plead laches, and the following statute of limitation:

"Those founded upon accounts and unwritten contracts; those brought for injuries to property or for the conversion of personal property or for relief upon the ground of fraud, and all other actions not herein otherwise provided for and specified within four [4] years." Sec. 27-104, N.M. Sts.1942.

The agreements purporting to settle the property rights of the parties were made on the 22nd day of June, 1936; the parties were divorced on June 23, 1936, and the complaint was filed in this cause in the district court on May 20, 1941.

On the question of laches the defendant states in his brief:

"In his fourth defense, set out in his answer (Tran. 22), defendant pleads

laches and estoppel. Upon this issue, the Court made its finding of fact number XVII (Tran. 49), and upon this finding made its conclusion of law number II (Tran. 53).

"In plaintiff's Brief in Chief, no error is assigned either to the finding of these facts or to the Court's conclusions drawn therefrom, and no claim is made that these findings are not supported by substantial evidence.

"True, in his praecipe for the record on appeal (Tran. 165), counsel assigns error to these two findings and two conclusions. But in the restatement of the errors upon which he will rely, as assigned in his brief (page 5), he does not include them in that restatement. No where in his brief, nor in his argument does he touch upon or raise any point concerning these findings and conclusions. The errors assigned in the praecipe (Tran. 165) are not before this Court, but have been abandoned."

The finding of the court referred to is as follows:

"That after said divorce, said defendant expended from $10,000 to $15,000 in and upon improvements upon said Jacona Ranch out of his own personal earnings accruing thereafter. That at the time of entering into said property settlement agreement plaintiff knew that said defendant intended to improve and must improve said ranch, and permitted him to do so without protest or objection, and without notice to him that she intended to there-after claim a community right interest therein."

The court concluded from this finding that plaintiff was guilty of laches and was "estopped from prosecuting her cause of action herein."

Defendant alleged in his answer:

"That said deed and said contract were intended and considered by the parties hereto as being and constituting but one contract, complete in itself and covering the whole subject matter of the division of the community real estate, separate, distinct and apart from and unaffected by the oral agreement concerning the disposition of their said personal community property hereinabove mentioned, then practically fully executed."

This no doubt is a correct appraisement of the settlement agreement except as to the cash on hand, which was disposed of by the written agreement, as a part of the consideration for the disposition made of the real property.

There was no division of the personal property other than the cash. The finding of the court regarding it is as follows:

" * * * and in said oral agreement it was also agreed that said defendant should retain as his own such of the furnishings and personal property situate upon said ranch as would permit him to conduct said ranch as what is known as a dude ranch, and that said plaintiff should have such items of said personal property, as were agreed upon."

For the purpose of construing the above finding we have resorted to the testimony. That of the defendant, on the question of the division of the personal property, was as follows:

"Q. But in your discussion with her as to what she would have, what personal property was it generally pointed out and understood what she wanted and what she was to leave with you? A. Before she left she packed her bags, about five bags, and a steamer trunk, and she took everything she wanted at that time.

"Q. Did she ever send for anything else? A. Yes, after they got the apartment at San Francisco and got space she did send for other things she wanted.

"Q. Did you send them to her? A. I packed them up with Mr. Shepard, we packed two crates of furniture and I added many things she did not want, as she explained."

The plaintiff testified in substance that the agreement was that the defendant should have all community personal property accumulated over eighteen years "except many personal presents." She described numerous of these presents, all of which were gifts to her; for which the defendant agreed to later pay her $2500. The trial court found, following the testimony of the defendant, that he had not agreed to pay her the $2500, or any other sum, for her interest in the community personal property. We conclude that the "items of said personal property as were agreed upon" which plaintiff was to have according to the court's finding, were her separate property, and that no consideration whatever was paid for the community personal property which the defendant retained.

" * * * The doctrine (regarding transactions between trustee and beneficiary) is enforced with the utmost stringency when the transaction is in the nature of a bounty conferred upon the trustee,—a gift or benefit without full consideration. Such a transaction will not be sustained, unless the trust relation was for the time being completely suspended, and the beneficiary acted throughout upon independent advice, and upon the fullest information and knowledge." Pomeroy's Equity Jurisprudence, 3d Ed., Sec. 958.

It is evident that there was no division of property as contemplated in law; that the agreement was without consideration and void (not voidable) from its inception, and no title ever passed under it to defendant. This property is now owned by the parties as tenants in common. Beals v. Ares, supra.

The plaintiff prayed for a cancellation of the deed and contract in question, and for a decree "granting to plaintiff an undivided one-half interest in and to all community property" of the parties.

The cancellation of the deed and contract is the gravamen of the action. Should they be cancelled it would follow as a matter of

law that the plaintiff would be entitled to a decree awarding her an undivided one-half interest in the community property. While there are cases to the contrary, the weight of authority is that such actions are founded on fraud, and are not actions to quiet title, or to recover real property. Davidsen v. Salt Lake City, 95 Utah 347, 81 P.2d 374, 118 A.L.R. 195 and annotations at p. 199.

The applicable New Mexico statutes are as follows:

"Those founded upon accounts and unwritten contracts; those brought for injuries to property or for the conversion of personal property or for relief upon the ground of fraud, and all other actions not herein otherwise provided for and specified within four [4] years." Sec. 27-104, N.M. Sts.1941.

"In actions for relief, on the ground of fraud or mistake, and in actions for injuries to, or conversion of property, the cause of action shall not be deemed to have accrued until the fraud, mistake, injury or conversion complained of, shall have been discovered by the party aggrieved." Sec. 27-106, N.M.Sts.1941.

Whether these statutes are controlling in courts of equity, we need not decide. The only excuse advanced by plaintiff for her delay in bringing suit is the assertion that at the time the agreements were made defendant had a present intention to not perform on his part, that he has never performed, and that she never discovered this intention until a short time prior to the institution of this suit. Assuming that the statute of limitation does not necessarily control in this proceeding, in equity, then plaintiff is estopped by her laches as to all grounds for cancelling the deed and contract, unless it is because of the alleged fraud just mentioned.

The plaintiff alleged in her complaint the following:

"Plaintiff further respectfully states that she was induced by the fraudulent promises of the defendant to sign the marriage settlement contract and to sign and execute the deed to the community property just one day prior to the divorce and, from that day, to-wit, January 22, 1936, all the defendant's acts with relation to each and all the promises and provisions of the 'Agreement' of the settlement of their community property rights have been tainted with fraud, to-wit:

"a. The total failure on the part of the defendant to fulfill, in whole or in part, any of his promises and agreements contained in the marriage settlement contract dated June 22, 1936, attached hereto.

"b. That as an inducement for the signing of the property settlement 'Agreement' and the signing and execution of the deed, the defendant at the time thereof orally agreed, in addition to the promises contained in the written agreement, to pay the plaintiff One Thousand Dollars in cash and an additional Fifteen Hundred Dollars at the rate of One Hundred Dollars per month; (defendant did pay to plaintiff the

sum of Two Hundred Dollars several days after the signing of the agreement, but almost immediately thereafter, borrowed the said sum back again from the plaintiff); and that at the time he made such promises, plaintiff is informed and believes, defendant never intended to fulfill or carry out the same, but that the same were made fraudulently for the sole purpose of inducing the plaintiff to sign the agreement and deed; and thus, the defendant has fraudulently and wilfully failed to perform that part of the written agreement contained in Paragraph 4 of the 'Agreement', to-wit, 'in consideration of certain cash moneys which have been divided between the parties by their mutual agreement, etc.' "

It is asserted by the plaintiff that these allegations charge in effect that the defendant at the time of the making of the deed and contract in question, never intended to carry out any of their provisions on his part to be performed.

The defendant asserts that the allegation has reference solely to the nonpayment of the $2500 which the court held the defendant did not agree to pay.

The allegations of the complaint could reasonably be construed either way, but the parties tried the case, apparently, upon plaintiff's theory.

The plaintiff testified that defendant promised for her protection to make a will and devise therein to her an undivided one-half interest in the ranch, regarding which the defendant testified as follows:

"Q. Have you ever made a will, Mr. Clark? A. Oh yes, I have always had some sort of will, a very short will, uncomplicated.

"Q. Have you made provision in that will, as you agreed to do, for her to have half of that ranch if you died? A. *I think that was in our will, yes.*

"Q. Is that provision in your present will, Mr. Clark?" (Question not answered). * * *

"Mr. Hughes: Did you agree in Mr. Barker's office to incorporate in your will, as additional security for your wife, that she was to receive half of the ranch in the event of your death? A. I believe it was done.

"Q. *Is that in your will today?* A. *I haven't looked at my will for a long time, I don't know.*

"Q. But you did make that provision? A. I did make it, yes."

Plaintiff testified that she had shown defendant certain objects she had collected over 18 years that meant a great deal to her; Christmas and birthday gifts from defendant and others which evidently were her individual property. Also, books and other articles which belonged to her personally, that had been given to her by her parents and others; "not trifles but really beautiful, worthwhile and expensive," which the defendant promised to send to her. Also she testified that she had written to defendant for certain of

these articles but received no answer from him. She then corresponded with a friend who finally secured two blankets, two feather pillows, three pieces of furniture, 12 books and four lamps and shipped them to her. The defendant included in this shipment some discarded stuff bought in Mexico and some old things that were worthless. She testified that he had kept none of his promises to her; that when she signed the agreement she believed he would carry it out; that she never realized otherwise until he refused to send her dog to her, and had sold thirty acres of land which she learned of shortly before this suit was instituted for some $4600 and had kept the money for more than a year and made no report of the sale to her, although one-half of the money belonged to her, under the agreement.

Regarding this question the defendant testified, as follows:

"Q. Did you discuss what personal property she was to have and you were to have? A. She could hardly have known just what she wanted at that time, they had no home, I mean Mr. Primus and Marjory, and not even an apartment and what she was to have I told her she could have when she asked for it.

"Q. Did she subsequently ask for it? A. Yes, she did.

"Q. But in your talk with her as to what she was to have, what personal property was it generally pointed out and understood what she wanted and what she was to leave with you? A. Before she left she packed her bags, about five bags and a steamer trunk and she took everything she wanted *at that time*.

"Q. Did she ever send for anything else? A. Yes, after they got the apartment at San Francisco and got space she did send for other things she wanted.

"Q. Did you send them to her? A. I packed them up with Mr. Shepard, who packed two crates of furniture and I added to that many things she did not want, as she has explained.

\*       \*       \*       \*       \*

"Q. *Did you send everything to Mrs. Clark, of her personal property, that she requested? A. From the very beginning?*

"Q. *Yes? A.* I don't know what she requested *in the letters I didn't open,* but I shipped not only the things she asked for, but many things she didn't.

\*       \*       \*       \*       \*

"Q. *Have you ever had any intention of any sort not to keep any promise that you have ever made to her? A.* No, I always expected to keep any promises.

"Q. Have you ever failed to keep any promises made to her as set out in this complaint? A. I failed to pay half of that amount shown there. (The $4600 paid for the land sold.)

\*       \*       \*       \*       \*

"Q. Then you have never paid her any monies? A. Not since the final money settlement. *I expected that would be her husband's job."*

If the defendant had the present fraudulent intent to not keep his agreements at the time he made them, then such agreements were fraudulent and voidable at plaintiff's suit. Telman v. Galles, 41 N.M. 56, 63 P.2d 1049. The intention with which plaintiff entered into the agreement is known only to himself. It is a state of mind that must be established as a fact. It is rarely susceptible of direct proof, but must ordinarily be inferred from other facts in evidence (State v. Walker, 109 W. Va. 351, 154 S.E. 866), such as his expressions, conduct, acts, and other circumstances from which it may be inferred. Hooker, Corser & Mitchell Co. v. Hooker, 103 Misc. 66, 170 N.Y.S. 570; Botsch v. State, 43 Neb. 501, 61 N.W. 730. The evidence outlined is sufficient to support an inference that defendant intended at the time he entered into the agreement not to perform it. On the other hand his categorical statement that his intention was to perform all promises made plaintiff is evidence that he did intend to comply with its terms.

The error of the trial court in denying relief to plaintiff was fundamentally unjust. There is no possible theory of law upon which the decree of the trial court could be sustained. Jaffa v. Lopez, 38 N.M. 290, 31 P.2d 988.

The only possible defense is the statute of limitations, or laches, to establish which the burden rested upon the defendant.

The trial court found the following facts on this question:

"That on December 1st, 1939, after the above agreement was signed and after the divorce, the defendant sold part of the community property ranch to Margaret G. Barker and her husband, receiving payment for the same but to this date has paid none of this to his former wife, the plaintiff in this case, despite his written agreement to do so. * * *

"That Margery Clark first discovered that Allan Clark had sold part of the ranch in September, 1940."

No finding was made on the question of defendant's intent, raised by plaintiff. While she has raised the question here, she secured no ruling on it by the trial court, and under the rules it would ordinarily not be considered on appeal.

In Gonzales v. Rivera, 37 N.M. 562, 25 P.2d 802, 805, we stated, through Mr. Chief Justice Watson:

"Ordinarily this court is content to examine the points here relied upon for reversal, if properly preserved at the trial, sustaining or overruling them. That is all appellants are entitled to as of right. But that does not limit the inherent power of this court to prevent fundamental injustice. Being convinced that the judgment was largely excessive, due to a failure to give any consideration to found facts which were material, deeming the case unusual, and an end of litigation desirable, to that end yielding something of form to substantial justice, without intending to relax the well-established principles of re-

view, but rather making a virtue of necessity, we disposed of the case as we did."

This case is unusual, and the results so unjust that we will exercise our inherent power to determine whether in fact the cause of action is barred by laches or limitation, by a reversal for a finding upon two questions of fact, to-wit:

1. Whether the defendant at the time of the execution of the deed and contract in question had the fraudulent present intent not to perform the contract on his part, and if so

2. The date upon which such fraud was discovered by plaintiff.

Also to determine from such facts as it may find, whether plaintiff's cause of action is barred by the statute of limitation or if she is estopped to prosecute her suit by her laches.

The cause is reversed and remanded with instructions to the district court to set aside the decree, to hear evidence to determine the questions of fact mentioned, and with findings made therefrom, state his conclusion of law as to whether plaintiff's cause of action is barred by the statute of limitation or whether she is estopped to prosecute her action because of her laches; and to enter a decree consistent herewith. It is so ordered.

SADLER, C. J., concurs.

MABRY, BICKLEY, and THREET, JJ., concur in the result.