261 P.2d 829

YUNKERS v. WHITCRAFT et al.
No. 5609.

Supreme Court of New Mexico.
Oct. 6, 1953.

Keleher & McLeod, J. C. Ryan, Iden & Johnson, Albuquerque, for appellants.

P. H. Dunleavy, Robert Emmet Clark, Albuquerque, for appellee.

McGHEE, Justice.

The defendants appeal from verdict and judgment rendered against them in an action by plaintiff for fraud and deceit. They urge as error the refusal of the trial court to direct a verdict for them when requested so to do at the conclusion of plaintiff's case and again at the conclusion of the entire case.

The plaintiff's complaint alleged the following:

"Second: That at all times hereinafter mentioned plaintiff was and still is a graphic artist of established international repute and as such was under formal contract to instruct pupils in the graphic arts at the New School of Social Research located in New York, New York for a term beginning in September, 1950 and ending in June, 1951; that plaintiff, upon the performance of said contract, would have received therefrom fees amounting to not less than $4,000.00 for his services in such capacity and an additional $2,000.00 to be derived from the sale of his prints and paintings during the twelve-month period beginning in September, 1950.

"Third: That in and during the months of July and August, 1950, plaintiff, while temporarily domiciled at the community of Corrales, County of Bernalillo, State of New Mexico, was advised by defendants and each of them that they were jointly and severally interested in establishing an outstanding school of art in New Mexico; that unlimited funds for the establishment and development of said school of art were at the disposal of defendants and each of them, that they were impressed with the established international repute and artistic accomplishments of plaintiff as aforesaid, that they were convinced that the success of said school would depend primarily upon the caliber of the director to be selected as such by defendants and each of them, and then and there defendants and each of them offered to plaintiff the position of director of said school, it being agreed that plaintiff would retain in lieu of salary the fees of the students enrolled by him in such school, and it being further agreed that the name of the school was to be 'Rio Grande Workshop,' a school of fine arts.

"Fourth: That by the methods and means aforesaid and by other exaggerations, enticements and fraudulent misrepresentations made to plaintiff by defendants and each of them, plaintiff, relying upon the sincerity, truthfulness and good faith

of defendants in making said statements and representations and neither knowing nor having the means of knowing that the same were in fact false and untrue and were made by defendants in reckless disregard of the consequences of plaintiff's reliance thereon, was thereby induced by defendants to return to New York, New York in September, 1950 and to advise his employers at the New School of Social Research aforesaid that he was terminating his contract with said employer as of the month of January, 1951 in order to accept the position aforesaid offered to plaintiff by defendants as director of the 'Rio Grande Workshop,' a school of fine arts; and plaintiff then and there accepted the offer of defendants to act as director of said school and devoted himself to the preparation of a catalog and to the selection of the necessary personnel to conduct said school in the spring of 1951; that in or about the month of January, 1951, plaintiff was advised by defendants and each of them, and without cause or justification on the part of plaintiff, that the plans for the establishment of said 'Rio Grande Workshop' by defendants had been abandoned by defendants and each of them and that accordingly, the services of plaintiff as director of said school would not be required by defendants, or either of them, and that they regretted the unfortunate financial and professional position in which their representations and offer, accepted by plaintiff as aforesaid, had placed plaintiff, but that defendants felt no legal or moral obligation to plaintiff, and that the loss in damages, as hereinafter set forth, sustained by plaintiff in reliance upon said representations and offer, were matters with which defendants had no concern."

The complaint concluded with an allegation a contract was entered into by plaintiff with defendants and set forth claim for damages and prayer for judgment.

At the trial of the case the plaintiff elected to proceed against defendants for the tort of fraud and deceit rather than upon contract.

After trial to a jury, verdict was returned finding the issues in favor of the plaintiff and assessing his damages in the amount of $7,000.

The defendants base their appeal under this point on the contention the complaint alleges a cause of action for fraud and deceit based upon fraudulent misrepresentations as to the intent of the defendants to carry out their promises as to future events; that the evidence presented by the plaintiff discloses that at the time the promises were made by the defendants they intended to perform them; that the breach of a promise to perform in the future may not be the basis of an action for fraud and deceit without a showing there was a present intent not to perform when the promise was made. In support of this argument

we are referred to the case of Telman v. Galles, 1936, 41 N.M. 56, 63 P.2d 1049, and annotation in 51 A.L.R. 46, supplemented in 68 A.L.R. 635 and 125 A.L.R. 879.

In response to this argument the plaintiff concedes the defendants intended to proceed with the workshop at the time the promises were made, and that they continued intending to perform until some moment after the plaintiff left for New York in September, 1950, and the sending of a letter by the defendant Whitcraft to the plaintiff in New York on November 25, 1950, wherein she suggested the proposed school be located on other land owned by her than the original site she had offered, and telling the plaintiff to let everything connected with the school wait until his return from New York; that it was the duty of the defendants to disclose their change of intention and that such non-disclosure is sufficient upon which to establish plaintiff's action for fraud and deceit and warrant the award of damages made by the jury.

It is unnecessary to express opinion as to whether non-disclosure of intention not to perform a contract, where there was bona fide intent to perform at the time the contract was made, may properly be the basis of an action for fraud and deceit; or whether if action be maintainable thereon, such issue was within the allegations of the plaintiff's complaint or properly before the jury for having been litigated by the parties; for even assuming a decision in favor of the plaintiff upon these questions, we have carefully reviewed the record and feel there is no substantial evidence to support the verdict and judgment.

Viewing the testimony in the light most favorable to the plaintiff, the facts arising therefrom are substantially as follows: The plaintiff is a graphic artist who prior to the events culminating in the present controversy earned his livelihood by the teaching of art and the sale of his creative work. He taught at the New School for Social Research in New York City during the regular school year and in the summer journeyed to Albuquerque, New Mexico, where he taught for two summers at the University of New Mexico. At the conclusion of the school term ending in May or June of 1950, he again returned to Albuquerque from New York, and in the early part of June of that year one of the newspapers in Albuquerque carried an article describing the plaintiff's artistic background, his plan to make Albuquerque his permanent home, and his hopes to establish an art center there where instruction in all fields of art would be given.

The interest of the defendants was aroused by this article, and they drove out to see the plaintiff at his residence. Then began the series of negotiations leading eventually to a verbal agreement be-

tween them that an art school to be known as the "Rio Grande Workshop" would be erected on land the defendant Whitcraft would provide, either by donation, lease or some other such arrangement; that construction costs would be borne by funds to be raised by the defendants; that the plaintiff would head the school and teach therein; that he and other instructors would receive fifty percent of tuition fees and the remainder of such fees would go to the school for running expenses and the eventual retirement of its financial obligations.

A few concrete things were done in furtherance of the project. Stakes for the building were laid out on a lot owned by defendant Whitcraft. Prospective instructors were approached about teaching in the school. $3,000 was deposited by the defendant Whitcraft in an Albuquerque bank to the account of the workshop, and a general concept of the plan for the building was agreed upon, together with an understanding of the general functioning of the school and its artistic aims.

At this juncture it was necessary for the plaintiff to return to New York to fulfill his teaching obligations for the fall term of 1950, and notify his employers he would not be able to teach thereafter because of his duties in connection with the workshop. Before his departure he was tendered a checkbook for the moneys deposited to the school, but refused to accept it, preferring that the defendant Kight, as treasurer of the workshop, handle the financial matters.

Immediately upon his return to New York he notified his employers of his intention to return to New Mexico after that term of school and devote his energies to the workshop. Such resignation was accepted, and the plaintiff then commenced work upon internal plans for the school, making trips to various museums to arouse interest in it, talking with exhibitors, and beginning the acquisition of supplies for the classes. The defendants were to continue in Albuquerque with the building of the school, and the plaintiff had given them the name of a local workman who could begin with the actual construction and he was to send specific plans for the school from New York.

There had been talk between the parties from time to time about the making of a formal contract to protect the interest of the defendant Whitcraft in the building site and in the funds she was to provide, and to give the plaintiff written authorization to act for the school as its director. Such formal contract was never drawn, and finding himself hampered without one, the plaintiff wrote to defendant Kight explaining the awkwardness of his position in dealing for the workshop and requested the preparation of the contract which Kight had promised him, suggesting his term of employment run for fifteen years.

Originally the plaintiff intended to draw the plans for the school himself, at which time it was to be a very simple structure, with but limited capital invested in it; however, with the entry of the defendants into the project they, or at least the defendant Kight, represented it would not be difficult to raise as much as $40,000 for the purpose, and the plans for the school became greatly more elaborate. The plaintiff, not being an architect, preferred to have the sevices of one in the drawing of the plans, and arranged for an architect in Albuquerque to draw them without cost to the workshop. The defendants disapproved the introduction of the architect into the picture, and through their letters began to express dissatisfaction with many other phases of the project. Finally the plaintiff wrote defendant Whitcraft certain of the matters she had written to him about were up to her for decision since, as he implied, she was the one with the money. Apparently this letter was the final wedge in the ever widening rift between her and the plaintiff, and in response to it she notified the plaintiff of her withdrawal from the project. There was some interchange of letters between the parties thereafter, with a final letter by Mrs. Whitcraft on November 25, 1950, above referred to, in which she broached the suggestion the plans for the school be continued at another location, also owned by her, but that everything in connection with the school be held in abeyance until the plaintiff's return to New Mexico.

Upon his return the plaintiff was critically ill, and did not see the defendants until in February of 1951, on which occasion the defendant Kight advised him it was useless to say anything to Mrs. Whitcraft about the project as she had completely withdrawn.

While the record is eloquent regarding the disappointment of the plaintiff's hopes, and the frustration of his plans, there is no tangible evidence to show the defendants formed a decision not to continue with their agreement which they did not disclose to the plaintiff while under duty so to do. The plaintiff himself best described what happened to the project when he spoke of the "degeneration of relationship." At another point he characterized the relationship as "deteriorating."

The following excerpts from the testimony of the defendants are the strongest evidence in the record to support the judgment. Mrs. Whitcraft testified:

"Q. * * * You had no trouble with (the plaintiff) until—up until the time he left for New York, did you? A. When I found that he didn't have any money, I would have backed out of the thing then, but (defendant Kight) was willing to go ahead and raise funds. Then, when he was so anxious to build, and left for New York, after he insinuated he was ready to build,

I was ready to drop the thing, then, but (defendant Kight) was willing to carry the thing on, and carry it on his shoulders. So these were an accumulation of various things, and then, when his letters became disagreeable, I realized I couldn't have that sort of thing in my back yard, and live with that sort of thing."

Again, in discussing the letter written by her after the letter advising she was withdrawing wherein she posed the suggestion the workshop be located on other land she owned, Mrs. Whitcraft testified in response to questioning as follows:

"Q. But, again, you don't tell (the plaintiff) that you are completely backing out of the deal, do you? You say, 'Let's think about it further, at this stage'? A. Yes, sir.

"Q. Why didn't you tell him, at that time, that you—the deal was off? A. Principally because he was feeling so terribly bad about it. It was letting him down gently."

The defendant Kight testified as follows:

"Q. Did you have any reason to doubt that the plan was going through, when Yunkers left in September of 1950? A. Yes, I did.

"Q. You had reason to think that it wasn't? A. I had reason to feel that in a proposal there might very easily be some form of breakdown, basic thinking that would be such it might break it entirely up.

"Q. You suspected that, at that time? A. No, I wouldn't—I didn't go into it half-heartedly. I didn't expect such a thing. It simply could happen in such elaborate negotiations."

We feel this testimony is far from enough to support the finding of the issue in favor of the plaintiff that the defendants formed an intention not to continue with their agreement which in fraud and deceit they did not disclose to him at a time when they knew he was relying on manifestations of their intention to perform.

It is not unlikely that in many, if not most, executory contracts there is some moment when one or the other of the contracting parties holds doubt that the contract will in actuality be executed, but this will hardly support an action for fraud if it develop the contract is not executed.

And, further, while Mrs. Whitcraft admitted she was "letting (the plaintiff) down easy," this admission referred to a letter written fifteen days after she had advised him she was withdrawing, which is the earliest time at which there is any substantial proof she had changed her original intention, and there is no showing the plaintiff sustained any damages as the result of reliance upon this later more conciliatory letter. Indeed, with the relationship then existing between the parties, as disclosed by

their exchange of letters, there is little likelihood the plaintiff could have thought the defendants would still keep their agreement.

As the foregoing discussion is dispositive of this branch of the case, other assignments of error raised by the defendants need not be considered, with the exception of the trial court's dismissal of the counterclaim of the defendants for $146.46, the alleged value of certain paper purchased by the plaintiff for the school and paid for out of the $3,000 bank account established for it. There was testimony that at the request of defendant Whitcraft the plaintiff came to her home and removed the paper for his own use, offering to pay for it. The counterclaim was dismissed on the court's own motion while giving instructions to the jury, and without giving counsel any notice of his intention so to do. We believe there was sufficient evidence to justify the submission of that issue to the jury and dismissal of it by the trial court was error. Accordingly, the trial court is directed to reinstate the counterclaim of the defendants.

The verdict and judgment entered below on the issue of fraud and deceit must be set aside and judgment entered for the defendants.

It is so ordered.

SADLER, C. J., and COMPTON, LUJAN, and SEYMOUR, JJ., concur.