147 So.2d 894 (1962)
Frances LUQUETTE, Plaintiff and Appellee,
v.
Mervine E. FLOYD, Defendant and Appellant.
No. 693.
Court of Appeal of Louisiana, Third Circuit.
December 18, 1962.
Rehearing Denied January 17, 1963.
Certiorari Denied March 12, 1963.
*895 Edwards & Edwards, by Edwin W. Edwards, Crowley, for defendant-appellant
Domengeaux & Wright, by Bob F. Wright and Jerome E. Domengeaux, Lafayette, for plaintiff-appellee.
Before CULPEPPER, FRUGÉ and HOOD, JJ.
HOOD, Judge.
Plaintiff, Frances Luquette, obtained a judgment of divorce from defendant, Mervine E. Floyd, on February 5, 1951. On the day this decree was rendered the parties entered into an agreement purporting to be a settlement of the community of acquets and gains which theretofore existed between them. In this action, instituted on December 17, 1959, plaintiff contends that the above-mentioned property settlement agreement should be annulled because of the alleged fraudulent concealment and misrepresentation of facts by defendant. She demands judgment ordering that the community be re-inventoried and that there be included in that inventory certain property which she alleges belonged to the community, but which had been concealed and placed out of her reach by fraudulent transactions of defendant. Plaintiff further demands that she be decreed to be the owner of a one-half interest in all of said community property.
After trial, judgment was rendered by the trial court in favor of plaintiff, annulling the property settlement agreement entered into on February 5, 1951, ordering that the community be re-inventoried, recognizing plaintiff as the owner of an undivided one-half of all said community property and decreeing that defendant be given credit in the partition of the community for the amount which he paid to plaintiff as consideration for the earlier property settlement. Defendant has appealed from that judgment.
The evidence establishes that the parties were married in 1934, and four children were born of that union. They experienced serious marital difficulties during the entire year 1948. On April 2, 1948, after having been told by a friend that defendant was "doing away with the property" of the community, plaintiff consulted an attorney and on his advice she executed and filed a formal declaration of family home affecting the property in Rayne which was then occupied by her and defendant as a residence. Their marital difficulties increased after the filing of this declaration, and finally the parties separated on September 11, 1948, at which time plaintiff left the defendant and moved to Abbeville. The parties have not lived together since that time, and a judgment of final divorce was rendered on February 5, 1951, dissolving the bonds of matrimony which theretofore existed between them.
On February 5, 1951, immediately after the final divorce decree was rendered, the parties entered into an agreement under the terms of which plaintiff, for a cash consideration of $5,500.00, sold and delivered to defendant all of her right, title and interest in and to thirteen separate tracts of land which belonged to the community which formerly existed between them. In this agreement *896 defendant assumed all debts and obligations of the community, and plaintiff waived any right to claim alimony. The agreement further contains the following provisions:
"* * * this act hereby constitutes a full and final property settlement of all of the property of the said community of acquets and gains which heretofore existed between the parties hereto.
* * * * * *
"This sale is likewise intended to cover all movable property which is not herein described and which belongs to the community of acquets and gains which heretofore existed between the parties hereto, being the intention to convey all of her rights, titles and interest in all bonds, stocks, cash in banks and any and all other property not herein described."
Plaintiff contends that she is entitled to have the above-described property settlement agreement annulled and the community re-inventoried and partitioned because defendant, by fraudulent conveyances and simulations, had concealed and had placed beyond her reach several other tracts of land which actually belonged to the community at the time the divorce was decreed. The evidence establishes that the following transactions took place during the years 1948 and 1952:
1. On March 16, 1948, which was prior to the divorce, defendant executed a deed purporting to convey to his son-in-law, L. Ellis Dupleix, and his wife (defendant's daughter by a prior marriage) a 20-acre tract of land in Acadia Parish for a consideration of $1,400.00. Also, on the same day, March 16, 1948, Arthur Myers, Jr., who was then indebted to defendant, conveyed to Dupleix and his wife an adjacent 20-acre tract of land for a recited cash consideration of $2,612.63. On April 2, 1952, which was subsequent to the divorce between the parties, these two 20-acre tracts of land were conveyed to defendant Floyd by Dupleix for a recited consideration of $4,012.63, which is the exact amount he supposedly had paid for the two tracts in 1948.
2. On April 3, 1948, prior to the divorce, defendant executed a deed purportedly conveying to Eddie Terro nine separate tracts of land in Lafayette Parish, totaling about 114 acres, for a recited cash consideration of $5,000.00. On December 18, 1948, Terro conveyed all of these tracts to Dupleix for the same consideration. Dupleix then conveyed the same tracts of land to defendant Floyd on April 1, 1952, after the divorce had been rendered, for a cash consideration of $5,000.00.
3. On April 27, 1948, before the divorce decree was rendered, James C. Arceneaux, Jr., who was Floyd's attorney in most of the transactions involved in this matter, conveyed to Delpha Stelly, a close friend of defendant, a 15-acre tract of land in Acadia Parish for a recited cash consideration of $5,000.00. On the following day, April 28, 1948, Stelly executed a deed purporting to convey the same 15-acre tract of land to defendant Floyd, also for a consideration of $5,000.00. The deed from Stelly to Floyd, however, was not recorded in the public records until December 30, 1952, which was after the judgment of final divorce had been rendered between plaintiff and defendant and more than four years after the deed was executed.
4. On July 1, 1948, before the divorce, defendant executed a deed purporting to convey to Delpha Stelly two city lots in Rayne for a recited cash consideration of $2,000.00. On August 23, 1948, Stelly executed a deed purporting to reconvey the same two lots to defendant Floyd for a consideration of $2,000.00, but this deed also was not recorded in the public records until *897 December 30, 1952, which was after the final divorce decree had been rendered.
It is apparent from the foregoing that record title to the tracts of land affected by the above-described conveyances was not vested in defendant Floyd or in the community at the time the divorce was rendered or at the time the property settlement agreement was entered into on February 5, 1951. None of the tracts of land affected by those transactions were described in the property settlement agreement entered into by the parties on that date, and plaintiff by that agreement did not convey her interest in those tracts to defendant.
Plaintiff contends that all of the above-described conveyances were simulations, that the property affected by them was actually owned by the community at the time the divorce decree was rendered and the property settlement agreement was executed, that defendant fraudulently concealed from her the fact that these tracts actually belonged to the community, that plaintiff accordingly was deprived of her community interest in said tracts or the value of them. She contends that because of these fraudulent conveyances and the concealment of these assets, she is entitled to have the property settlement agreement annulled and to have the community re-inventoried and partitioned. Defendant, in resisting her demands, contends primarily that all of the above-described conveyances were bona fide sales, that the community did not own any of the tracts of land affected by them at the time the divorce decree was rendered or at the time the property settlement agreement was entered into, and that he did not conceal any of the community assets from plaintiff or misrepresent any facts to her.
Defendant testified that all of the above-described sales to which he was a party were cash transactions, and that in each case the consideration was paid in currency. His testimony to that effect was not supported by any other evidence, except that it was corroborated to some extent by that of his son-in-law, and by that of Terro and Stelly. Although Dupleix and Terro stated that the recited consideration was paid in each of the transactions to which they were parties, they could not remember whether the payments were made in cash or by check, and they could not explain to our satisfaction where they obtained the funds with which to make those payments, or what disposition they made of the funds which they purportedly received from defendant when the tracts were conveyed back to them in 1952. Stelly stated that he paid and received currency in the transactions to which he was a party, but he too was unable to explain where he obtained the money with which to make the payments or why he conveyed the same property to defendant within a few days after he purchased it.
Although there is some testimony to the contrary, we think the evidence shows clearly that defendant continued to supervise and to exercise complete control over each of these tracts of land from 1948 until the record title to each such tract was conveyed or reconveyed to him in 1952.
When asked why the two deeds from Stelly, dated in 1948, were not recorded until December 30, 1952, defendant testified that Stelly had actually executed the documents in 1952, but that a mistake had been made in dating them. His testimony to that effect, however, is in conflict with that of Stelly and of the notary before whom the documents were executed, both of whom testified that the sales from Stelly to defendant were executed on the dates recited in the deeds. We are convinced that these deeds from Stelly to defendant were executed in 1948, and that they were not filed for record until more than four years later, after the property settlement agreement had been executed. As between the parties, therefore, title to the property affected by those deeds was vested in defendant, and thus in the community, at the time the divorce decree was rendered.
The evidence further shows that on June 16, 1948, defendant executed a mortgage for *898 $15,000.00 in favor of "Future Holder or Holders," affecting a 78.66-acre tract of land which then belonged to the community. This mortgage was cancelled on December 30, 1952, which was the same day that the delayed recordation of the two deeds from Stelly was made. Defendant explained that the note was actually negotiated in 1948, that the proceeds of the loan were used to pay prior existing debts, and that he repaid this loan in 1952, shortly before the mortgage was cancelled. Plaintiff contends that this mortgage also was a sham and was executed as a part of defendant's scheme to deprive her of her interest in the community. If we should accept defendant's explanation, it appears from his testimony that during the year 1952 he not only paid this $15,000.00 mortgage note, but he also paid at least $11,000.00 more to purchase or to reacquire property from Dupleix, Terro and Stelly. He maintains that all of these payments, aggregating more than $26,000.00, were made in currency. The evidence shows that in the early part of 1951 defendant borrowed $5,500.00 in order to pay plaintiff the amount which he had obligated himself to pay under the property settlement agreement, and he says that it took him "three or four years to pay it out." He does not explain why it was necessary for him to borrow $5,500.00 in 1951, and why it took him three or four years to retire that loan when, according to his testimony, he had such large sums of currency in 1952 which he was using for investment purposes. His explanation that he made "real money" in 1952, 1953 and 1954 in his slot machine business, without any corroborating evidence to that effect, does not impress us any more than it apparently did the trial judge.
The trial court, in effect, found that the above-described sales or transactions executed in 1948, to which defendant was a party, were simulations and were intended to fraudulently deprive plaintiff of her interest in the community. In so holding, the following language was used by the trial court:
"The Court finds that all of the sales, transfers, etc., were simulated and they were effected so as to decrease the amount which defendant would have to pay plaintiff to purchase her share of the community property."
Although plaintiff in this suit is not seeking to annul any of the 1948 sales, there would be no basis for setting aside the property settlement agreement which was entered into on September 5, 1951, unless she does establish that at least some of the 1948 transactions were simulations, that by means of those fraudulent conveyances defendant concealed and misrepresented material facts to her, and that she relied on those representations in executing the agreement. In our opinion, therefore, the rules relating to the proof which is required to support an action to set aside a sale on the ground of simulation are applicable here.
The law is settled that in an action attacking a sale or conveyance as being a simulation the burden of proof rests primarily upon the party making the attack to establish the facts upon which the invalidity is based. If one alleging simulation, however, produces evidence of circumstances which creates highly reasonable doubts or suspicions as to the honesty of the transaction, a prima facie case is considered as having been made out and the burden of proof is shifted to the party relying on the validity of that transaction to show that a valid sale existed. Burch v. Nichols, La. App. 3 Cir., 126 So.2d 713; Broussard v. Broussard, La.App. 3 Cir., 132 So.2d 85; Landry v. Landry, La.App. 3 Cir., 140 So.2d 706 (Cert. denied).
In our opinion, the evidence in the instant suit creates highly reasonable doubts or suspicions as to the honesty and good faith of the defendant in executing the deed to his son-in-law and daughter on March 16, 1948, the deed to Eddie Terro on April 3, 1948, and the deed to Delpha Stelly dated July 1, 1948, and for that reason we think plaintiff has made out a prima facie case of simulation. Our conclusion to this effect is based largely on the following facts: (1) The consideration for these *899 sales were allegedly paid in currency; (2) No satisfactory explanation appears in the record as to where the parties obtained the cash which they allegedly paid, or what disposition was made of the currency which they allegedly received in connection with these sales; (3) The transactions were between close relatives or friends of long standing; (4) The defendant continued to supervise and control all of these tracts of land after he purportedly had sold them; (5) The transactions took place at a time when plaintiff and defendant were having serious marital difficulties and it was apparent to both that a separation was imminent; and (6) All of said tracts of land were reconveyed to defendant for the same recited consideration after the divorce had been granted and the property settlement agreement had been entered into.
Since plaintiff has made out a prima facie case of simulation, the burden of proof shifts to defendant to prove the validity of these sales. In our opinion, the defendant has failed to meet this burden of proof and we conclude, as did the trial judge, that at least the three deeds hereinabove last described were simulations and were executed by defendant for the purpose of fraudulently concealing from plaintiff the fact that these items of property belonged to the community and of depriving plaintiff of her just share of the community property.
Defendant contends alternatively, however, that plaintiff was aware of the simulated sales at the time she executed the property settlement agreement in 1951, and accordingly, that she did not rely on any misrepresentation of fact by defendant. It is argued that it is incumbent upon plaintiff to establish not only the falsity of a material fact represented by the defendant, but also that she had a right to rely upon, and did in fact rely upon, that representation.
As correctly pointed out by counsel for defendant, the law is settled to the effect that when a person to whom the alleged false representation is made does not rely on that representation, he will not be heard to complain of fraud. In order for him to obtain a recision of the contract on the ground of fraud or misrepresentation, it is incumbent on him to establish that a material fact was falsely represented to him by the defendant, and that he had a right to rely on, and did in fact rely on, that representation. La Croix v. Recknagel, 230 La. 842, 89 So.2d 363.
The evidence shows that plaintiff had been informed prior to the execution of the property settlement agreement that her husband was disposing of community property and that she knew of some of the sales which had been made. She employed an attorney to represent her in the divorce proceedings and this attorney, from an examination of the records, learned of the conveyances and mortgages which had been executed by defendant prior to September 5, 1951. We do not interpret the evidence as showing that plaintiff's counsel had any knowledge of the deed from Stelly to defendant, dated April 28, 1948, affecting a 15-acre tract, or the deed from Stelly to defendant, dated August 23, 1948, affecting two lots in Rayne, neither of which deeds had been recorded at the time the property settlement agreement was executed. Also, none of the tracts which defendant had purportedly sold to Dupleix and Terro in 1948 had been reconveyed to defendant by the time the property settlement agreement was entered into, so plaintiff's counsel could not have had knowledge of those transactions at that time. With the information which plaintiff's counsel had on September 5, 1951, he advised plaintiff that in his opinion it was impossible to prove at that time that the sales were simulations, but that the fraudulent nature of the transactions may become apparent and might be established later if the property which defendant purportedly had sold should be reconveyed to him. Plaintiff contacted her attorney again after these tracts of land had been reconveyed to defendant, and thereafter this suit was instituted.
It is apparent from the foregoing that although plaintiff, through her counsel, *900 knew of some purported sales of community property from defendant to others, which she suspected were simulations, she did not have knowledge or proof of the fact that those sales were void as simulations, and she did not know of some other unrecorded conveyances by which the community had acquired property. The evidence does not show that defendant at any time ever pointed out specifically to plaintiff what property belonged to the community.
The issue presented here is similar to that which was presented in Lee v. Lee, 214 La. 434, 38 So.2d 66. In that case the plaintiff wife knew that her husband had disposed of community assets prior to the dissolution of the community, and although she suspected that these transactions were simulations, she felt that these assets had been placed out of her reach. She dreaded a lawsuit, believing that she would lose in the long run, and accordingly, she signed the community property settlement agreement which was being attacked in that suit. The trial court annulled the community property settlement agreement, and the Supreme Court in affirming that judgment said:
"We must bear in mind that the parties to this contract or agreement were not strangers dealing with each other at arm's length, but had the relationship of husband and wife to each other. Mr. Lee, as head and master of the community, was in a position to sell and dispose of the community property without the knowledge and consent of his wife. The property was under his supervision and control, and, with the advantage which this position gave to him, he practically, if not positively, coerced his wife to accept the settlement, knowing full well at the time that he had withheld from her the true value of the property belonging to the community and also knowing that she had been forced into a position, without the benefit of counsel, of accepting a settlement subject to his own terms. In our opinion, under the circumstances in this case the husband did not discharge his duty to deal fairly and justly with his wife."
The defendant in the instant suit, as head and master of the community, was in a position to sell and dispose of community property without his wife's knowledge or consent. The property was under his supervision and control, and with these advantages it was relatively easy for him to conceal community assets from plaintiff. Under the circumstances presented here, we think the defendant was under a duty to disclose to plaintiff the fact that the community owned the tracts of land which had been fraudulently conveyed by him, and also to disclose the fact that the community was then the actual owner of the tracts of land affected by the two unrecorded deeds from Stelly. In our opinion, the failure of defendant to disclose these facts to plaintiff at the time the community property settlement was negotiated and entered into constitutes a fraudulent concealment or misrepresentation of material facts upon which plaintiff had a right to rely and upon which she did rely. Because of that concealment and misrepresentation, we think the trial court correctly annulled the property settlement agreement and ordered that the community be re-inventoried.
For the reasons herein set out, therefore, the judgment appealed from is affirmed. All costs of this appeal are assessed to defendant-appellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.