CULPEPPER, Judge.
Plaintiff brings this suit against her former husband to annul, on the grounds of lesion and fraud, a partition of community property between them. The district court rendered judgment voiding the partition for lesion. The defendant appeals.
The general principles of law involved are:
LSA-C.C. Art. 1860 defines lesion as:
“Lesion is the injury suffered by one who does not receive a full equivalent for what he gives in a commutative contract. The remedy given for this injury, is founded on its being the effect of implied error or imposition; for, in every commutative contract, equivalents are supposed to be given and received.”
With reference to partitions LSA-C.C. Art. 1861 states there is lesion “In partition where there is a difference in the value of the portions to more than the amount of one-fourth to the prejudice of one of the parties
With particular respect to partitions, LSA-C.C. Art. 1398 provides:
“They may even be rescinded, on account of lesion; and, as equality is the base of partitions, it suffices to cause the rescission, that such lesion be of more than one-fourth part of the true value of the property.”
The French scholars interpreted Article 887 of the Code Napoleon (the source article for our own Civil Code Art. 1398) as meaning that a co-heir attacking a partition for lesion must show the lesion exceeded one-fourth, i. e., that he received less than three-fourths of the share to which he was entitled in the partition. Planiol, Civil Law Treatise, An English Translation by the Louisiana State Law Institute, Vol. 3, Part 2, page 178, No. 2423; 4 Planiol et Ripert, Traite Pratique de droit civil francais (2d ed. 1956) Sec. 691; 4 Julliot de la Morandiere, Droit civil (1959), Sec. 742; 5 Demolombe, Cours de code Napoleon (1880), Sec. 417; 3 Baudry-Lacantinerie et Wahl, Traite Theorique et pratique de droit civil (1899), Sec. 3440; 10 Aubry et Rau, Droit civil (6th ed. 1935), Sec. 626; 3 Colin, Capitant et Julliot de la Morandiere, Cours Clementaire de droit civil francais (1950), Sec. 1271. See also Beatty v. Vining, La.App., 147 So.2d 37 (2nd Cir. App.1962, Writ of Certiorari denied) and the cases cited therein.
In all questions of lesion, the market value of the property at the time the contract was entered into, is the criterion by which lesion is to be ascertained. LSA-C.C. Art. 1871; Beatty v. Vining, supra.
The facts show plaintiff and defendant were judicially separated from bed and board on September 11, 1961. On that same day they entered into a voluntary partition of the community property. Under this partition agreement plaintiff wife received, free from all debts or encumbrances, the Tournoy Motel, including the land, buildings, equipment, furniture, furnishings, etc. (admitted by the parties in this proceedings *432 to have a value of $75,000) and a 1962 Ford Galaxie automobile (shown in these proceedings to have a value of $3,600). The defendant husband received several tracts of land, including the tract on which was located the Pitre Ford Company in Ville Platte and the tract on which the parties’ home was located. Defendant also received: “all accounts receivable, notes receivable, bank accounts, good-will, stocks, bonds, all movable property, furniture, cattle and horses, formerly belonging to the community of acquets and gains between Elin Pitre and Effie Ardoin, not granted to Effie Ardoin and accepted by her by this act of partition.” In the agreement, the defendant husband agreed to assume all debts of the community.
On the trial of the case, a lengthy record was compiled to show the market value of the community property and the amount of the community debts, as of the date of the partition agreement.
We will first discuss the value of the community property. The trial judge has pointed out, that surprisingly enough, the values of the various tracts of real estate are not in serious dispute. Plaintiff and defendant each had three appraisers. Those for the plaintiff fixed the value of the real estate at $299,284 and those for the defendant at $261,058. Counsel for both sides agree that these appraisers were all qualified and were attempting to give honest opinions as to the market value of the various tracts of land as of the date of the partition. The trial judge took the average of these two figures and fixed the value of the real estate at $280,434. Under the circumstances we find no error in this determination.
Turning now to the valuation of the personal property owned by the community at the time of the partition, we find there is little dispute as to the valuation of the following items which the trial judge has fixed as follows:
“(a) 24 Shares of Stock (American Securities Bank of Ville Platte) . $ 3,000.00
(b) A boat, motor & trailer (cost — $4,000.00) Market value .. 2,000.00
(c) A building identified as a camp. 600.00
(d) A checking account in Elin Pitre’s name. 479.49
(e) Ford Galaxie (Given to wife) . 3,600.00
(f) Furniture & fixtures in residence (Cost — $8,000.00) Admitted market value . 2,000.00
$11,679.49”
The only item of personal property which is in serious dispute is the Pitre Ford Company, including the franchise, good will, cars, inventory, supplies, notes, accounts receivable, etc. In a detailed and well considered written opinion the district judge found the value of Pitre Ford Company to be $40,256. We adopt the following portion of his opinion as our own:
“The Court should point out that the value of this last item (Pitre Ford Company) is in serious dispute, between the parties. J. R. Deshotel, defendant’s bookkeeper, placed the book value of same, exclusive of real estate, at the end of July, 1961, at $85,962.59; at the end of August, 1961, the book value was $82,552.99, exclusive of real Estate; at the end of September, 1961, the book value was fixed by him at $136,021.46. (The last figure jumped considerably because stock belonging to the community was sold a few days *433 before the divorce, and the proceeds deposited to the account of Pitre Ford.) The average of the three figures would be a more realistic ‘book value’. These values, according to the bookkeeper, were true and correct, allowed for depreciation, and were realistic. The land values carried upon these same statements, were in line with that fixed by the experts at the trial. Cars, parts, etc., were carried at cost, less depreciation. There was no value allowed for the Ford Franchise Dealership or for the going business good will. Defendant claims the last two items should not be valued as too uncertain. Plaintiff did not prove the value thereof, but the Court feels that this dealership and the business good will thereof, was such that it had a value — rather uncertain, but substantial. However, the Court will pass this for the time being, and fix no value for same at this time.
“One other disputed item should be mentioned by the Court. The building of Pitre Ford, extends over the highway right of way and could conceivably have to be altered in its front appearance, to clear the road right of way. What this would cost, and what effect it might have upon the plant as a whole was very much at issue. The appraisers who valued the real estate did not take this into consideration. Considerable evidence was adduced to show trouble and expenditures by defendant in order to forego moving the encroachments from the highway right of way. A suit had been filed to compel removal of the encroachments at one time; this suit was not prosecuted and apparently the Highway Department agreed to dismiss it. But, the Court finds, even if removal of encroachment would be insisted upon at some future date, which is most unlikely, the cost thereof would not be too great, nor would the value of the plant, as a whole, be materially affected thereby. Considering this possible contingency and considering, too, that book values as carried by the bookkeeper upon the monthly statements of Pitre Ford, might be a little on the high side of market value, the Court makes the following adjustments to establish the value of Pitre Ford assets, exclusive of real estate.
“First, it will take the average of the three monthly statements, as prepared by defendant’s bookkeeper. This would be $101,512.34. From this should be deducted the sum of $21,000.00 (erroneously carried in the financial statement as ‘leasehold improvements’) but in-reality considered already in the real estate values above. This would leave $80,512.34. The Court accepts fifty (50%) per cent of this last figure as a realistic market value, after making allowance for the possible contingency of removal of encroachment on the highway right of way, which the Court considers remote. This would give a market value of Pitre Ford assets, exclusive of real estate and exclusive of franchise and business good will, at $40,256.17.”
Thus we find that the value of the community assets, as of the date of the partition agreement, was as follows:
Real estate. . $280,434.00
Personal property . (exclusive of Pitre Ford Co.) . 11,679.00
Pitre Ford Co. (exclusive of real estate) .. 40,256.00
Total assets of community . $332,369.00
*434 In order to determine the net value of the community, as of the date of the partition, we must now determine the amount of the community debts as of said date. There is little dispute as to the following debts as found by the district judge:
“1. (Tr. 495) State Department of Revenue (“D-10”) . $14,348.18
2. (Tr. 497) Various Personal Bills in the Aggregate amount of: (“D-ll”) . 1,058.10
3.- (Tr. 499) Builders Lumber and Supply Co. (For improvements done to property prior to partition) (“D-12”) - 3,406.52
4. (Tr. 503) Two-thirds (2/3rds) of Income Tax Due for 1961 . 4,400.00
5. (Tr. 504) Two-thirds (2/3rds) of Parish and City Taxes (“D-13”) . 2,102.34
6. (Tr. 506) Balance due on Boat & Trailer (“D-14”). 4,322.34
7. (Tr. 505) Fusilier, Pucheu & Soileau (Attorneys’ Fees) .. 500.00
8. (Tr. 548) Kelly Ardoin. 2,000.00
9. (Tr. 550) Federal Land Bank (Balance on Home) . 8,640.32
10. (Tr. 550) Mamou Investment Company (Balance Due on lots purchased) . 502.00
11. (Tr. 551) Mrs. Joyce Rae Ludeau (Balance due on mortgage for property purchased prior to partition) . 4,600.00
12. (Tr. 447) American Security Bank of Ville Platte. 40,300.00
13. (Item 4 of “D-7”) Assumption of Mortgage (Mervin Vidrine Home) . 8,798.00
TOTAL. $94,971.81”
The principal item of indebtedness in dispute is the “contingent liabilities” resulting from defendant’s endorsement with recourse of chattel mortgage notes on vehicles. The district judge disposed of this issue in the following portion of his very ■excellent written opinion, which we adopt .as our own:
“One other item should be considered by the Court in summing up the debts. There were contingent liabilities unpaid, at the time of separation, which must be reckoned with. These were a result of notes secured by mortgage on motor vehicles, which were sold by Pit-re Ford to financial institutions, and endorsed with recourse. Most of the finance companies who deal with such .■securities, require or establish a ‘reserve fund’, (about four (4%) percent of the finance charges) to take care of the repossessions, etc., or contingent liabilities of the dealer selling negotiable paper to that Company. This was the case here, except for one bank, which had approximately $47,000.00 of negotiated secured notes, endorsed by Pitre Ford or Elin Pitre. As a rule, according to the testimony, the reserve fund established takes care of the dealer’s repossessions and contingent liabilities. There was a total of $450,000.-00 of negotiable paper, outstanding at the time of the partition, that was guaranteed by the endorsement of Elin Pitre. A lot of evidence was adduced to show repossessions, charges against reserves, and in some cases, actual losses on particular transactions. Com- *435 mcrcial Securities Company, Commercial Credit Company, and Universal C.I.T. Corporation, had the hulk of this paper. The reserves, they showed, took care of contingent liabilities, as a rule. The American Security Bank of Ville Platte, did not have these reserves. Pitre Ford or Elin Pitre was called upon to pay some endorsements there. Plowever, he was given the secured note, and as a rule, realized a substantial part of the secured debt by foreclosure, resale or otherwise. Con-, sidering the experience of many years, in the testimony of the several witnesses, the Court is willing to allow and does allow as a debt upon the contingent liabilities, two (2%) percent of the total over and above the reserves created in favor of Elin Pitre. On the $450,000.00 total, there would be a debt of $9,000.00. If this sum is added to the other fixed and admitted indebtedness of $94,971.-81, we have a total indebtedness assumed by Elin Pitre, in the sum of $103,-971.81.”
From the above we conclude that, as of the date of the partition agreement, the community assets totaled $332,369 and the community debts $103,971, leaving the net value of the community property at $228,-398. The plaintiff wife’s one-half of the net value would be $114,199. This latter figure is the share which plaintiff was entitled to receive in the partition.
Under the authorities cited above, the plaintiff in order to rescind this partition agreement for lesion exceeding one-fourth, must show that she has been wronged by more than one-fourth, i. e., that she has not received three-fourths of that which she should have received. Three-fourths of $114,199 is $85,649.25. As stated above, there is no dispute that the Tournoy Motel received by plaintiff had a market value of $75,000 and the 1962 Ford Galaxie. automobile had a value of $3,600, for a total of $78,600. Subtracting $78,600 from $85,649.-25, we see that plaintiff has proved lesion exceeding one-fourth by the sum of $7,049.-25.
In their brief filed in this court counsel' for defendant have urged five specific errors in the trial court’s calculations. Error No. 1 alleged is that the court did not allow for the cost of moving certain pumps,, signs and building overhangs, on the Pitre-Ford Company property, from the highway right of way. This contention is answered in the above quoted portion of the trial court’s opinion, wherein it is pointed out that although the Highway Department filed a suit for the removal of these encroachments, the suit has not been prosecuted and the Plighway Department has since agreed to dismissal thereof. Furthermore, as the lower court pointed out, the cost of removing these encroachments, even if required by the Highway Department, would not be great and would not materially affect the value of the property. The evidence does not show that it will be necessary to-move the entire building back several feet, as is contended by defendant.
Error No. 2, urged by defendant, is that all of the appraisers, both for plaintiff and defendant, included the value of the furniture in their appraisals of the home, yet the trial judge has shown, as a separate item of' personal property, the value of the furniture at $2,000. Actually, as we understand' the testimony of Mr. Gilbert Vidrine, appraiser for the plaintiff, the plaintiff’s appraisers did not consider the value of the furniture in their appraisal of the home-place. At page 289 of the transcript he testified as follows:
“Q. Now did your valuation of the homeplace take into consideration the furnishings contained there, sir?
“A. No sir.”
We think, under the evidence, the district judge was fully justified in showing the value of the furniture as a separate item of $2,000. However, even accepting defendant’s contention, for the sake of argument,. *436 this discrepancy of only $2,000, when averaged into all of the real estate appraisals, would not be sufficient to change the result in this case.
The third error urged by defendant is that the lower court should have allowed more than 2% of the contingent liabilities, in computing the total debts of the community. We find the evidence fully supports the trial judge when he points out that the reserve funds established by the various finance ■companies are intended to, and usually do, ■offset any contingent liabilities of the automobile dealers resulting from their endorsement of notes with recourse. Several automobile dealers, of many years experience, testified they had never suffered over 2% losses on such contingent liabilities. Some actually made money on reserve funds. The •evidence as a whole amply supports the trial court’s finding.
Error No. 4 urged by the defendant is that the lower court erred in taking a “flat 50% figure as a realistic market value of the Ford Motor Company * * Defendant contends the notes and accounts receivable, as well as the used cars and automobile parts, should have been shown at no more than 10% of their value, as carried on the books of the Pitre Ford Company. As the trial judge points out, defendant’s own bookkeeper testified that these book values were realistic. The evidence certainly does not support a contention that these items ■should be valued at as little as 10% of that shown on the books of the company. We think the evidence supports the trial judge’s figures as being both realistic and fair.
Error No. 5 urged by defendant is the •general proposition that rescisions for lesion .are not favored in the law, and require ■strict proof by the complainant. We think the district judge has been very fair and realistic and has, in most instances, viewed the evidence in the light most favorable to ■defendant. We find no manifest error in his conclusions. On the contrary, we think the evidence amply supports his findings.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellant.
Affirmed.
SAVOY, J., dissents and assigns written reasons.