172 So.2d 693

**Mrs. Effie Ardoin PITRE**

v.

**Elin PITRE.**

**No. 47293.**

Feb. 23, 1965.

Rehearing Denied March 29, 1965.

Jack C. Frugé, Fusilier, Pucheu & Soileau, by L. O. Fusilier, Ville Platte, for defendant and appellant.

Seth Lewis, Jr., Lewis & Lewis, Opelousas, for plaintiff-appellee.

HAWTHORNE, Justice.

Mrs. Effie Ardoin Pitre and Elin Pitre were judicially separated from bed and board on September 11, 1961, and on the same day they entered into a partition of the property which belonged to the community of acquets and gains. In the present suit the wife seeks to have the partition annulled and set aside for lesion and fraud. The fraud alleged is that the defendant did not disclose to her the value of any of the community property and particularly did not describe or evaluate the movable property, that defendant did not disclose the amount of the various debts or their aggregate amount, and that although one of the considerations of the partition was the husband's assumption of a con-

tingent liability to certain finance companies arising out of his endorsement of $400,000.00 worth of recourse paper, actually the risk occasioned by his endorsement was relatively small. She further alleged that she would not have executed the partition if she had known the true value of the properties received by him and by her.

The Court of Appeal affirmed a judgment of the district court rescinding the partition on account of lesion under Article 1398 of the Civil Code.[1] See 162 So.2d 430. We granted writs on the application of the defendant husband, 246 La. 597, 165 So.2d 486, and the entire case is now before us just as if it were here on appeal.

We agree that the partition must be annulled, but prefer to rest our decision on other grounds than lesion. Under the view we take of the case, it will not be necessary to discuss the strict proof required in the usual case for a rescission on the ground of lesion. This husband and wife partition cannot be dealt with as if it were an ordinary partition, for reasons which will appear from our discussion of the relevant law on the subject.

■ In this state the husband is the head and master of the partnership or community of gains; he administers its effects and even disposes of the revenues which they produce, and may even alienate them, without the consent and permission of the wife. La.Civ.Code Art. 2404. At the dissolution of the marriage the effects which compose the partnership or community of gains are divided into two equal parts between the husband and the wife. Art. 2406. Moreover, equality is the base of all partitions. Art. 1398.

■ It is to be especially noted, as we have said, that the parties to the partition here were husband and wife and not strangers to each other dealing at arm's length; and for this reason this partition is to be governed by rules different from those applicable to ordinary partitions. This difference stems from the provisions of our law set out above, that the property belonging to the community is under the supervision and control of the husband, who administers its effects without the consent and permission of the wife.

The existence of this difference in the rules applicable to husband-wife partitions was recognized in the cases of Lee v. Lee, 214 La. 434, 38 So.2d 66, and Luquette v. Floyd (La.App.), 147 So.2d 894. In setting aside the partition in the Lee case this court, after finding that the husband was actively guilty of concealing community

1. Article 1398 reads: "They [partitions] may even be rescinded, on account of lesion; and, as equality is the base of partitions, it suffices to cause the rescission, that such lesion be of more than one-fourth part of the true value of the property."

property from the wife at the time the settlement of the community was made, stated:

"This contention might merit our serious consideration if the parties to the contract were strangers to each other, but, since they are husband and wife, and since the husband by virtue of his superior position may compel his wife to settle the community for less than her share, this court will scrutinize such contract with the utmost care in order to ascertain whether he has coerced his wife by any circumstances into signing an unfair settlement agreement."

In Luquette v. Floyd, supra, the Court of Appeal said:

"* * * The property was under his supervision and control, and with these advantages it was relatively easy for him to conceal community assets from plaintiff. Under the circumstances presented here, we think the defendant was under a duty to disclose to plaintiff the fact that the community owned the tracts of land which had been fraudulently conveyed by him, and also to disclose the fact that the community was then the actual owner of the tracts of land affected by the two unrecorded deeds from Stelly. In our opinion, the failure of defendant to disclose these facts to plaintiff at the time the community property settlement was negotiated and entered into constitutes a fraudulent concealment or misrepresentation of material facts upon which plaintiff had a right to rely and upon which she did rely. * * *"

Since under the Louisiana community property system the husband during the marriage has the management and control of the community property, one-half of which belongs to the wife, he as the "managing partner" is in a position to know relevant facts concerning this property which his wife does not know. Thus when the marriage is dissolved and the community property is to be partitioned, he stands in a fiduciary relationship toward his wife and owes to her the duty of full disclosure of the community property and its value, and must not conceal or misrepresent any material fact upon which she has a right to rely and upon which she might rely.

The fiduciary relationship between the husband and the wife, which imposes upon the husband the duty not to conceal or misrepresent any material fact and to make full disclosure of all the community property and its value, has been recognized by courts of the states having community property systems similar to ours, and these courts have set aside partitions of community property where the wife did not receive her fair share and the husband breached his fiduciary duty.

In Vai v. Bank of America National Trust and Savings Ass'n, 56 Cal.2d 329, 15 Cal.Rptr. 71, 364 P.2d 247, the Supreme Court of California said:

"The dissolution of a partnership and attendant agreements respecting partner-

ship property appear to be remarkably similar to the dissolution of the conjugal relation and property settlement agreements. Briefly, 'in all proceedings connected with the conduct of the partnership every partner is bound to act in the highest good faith to his copartner and may not obtain any advantage over him in the partnership affairs by the slightest misrepresentation, concealment, threat or adverse pressure of any kind * * *.' * * * In view of the nature of the relation, the necessity of exercising the highest good faith in it is especially marked between a managing partner and his copartners * * *. In the course of negotiations for dissolution, each partner must deal fairly with his copartners and not conceal from them important matters within his own knowledge touching the business and property of the partnership. * * *

"Manifestly, the fiduciary duties and rules governing their performance by a husband should be no fewer or less rigorous than those imposed upon business partners. * * *

" * * *

" * * * The failure of the husband in the instant case to disclose fully and fairly material facts relating to the value of community assets from which John gained an advantage constitutes a concealment of material facts and a breach of this fiduciary duty. This is constructive fraud, whether or not such failure to disclose was accom-

panied by an actual intent to defraud. * * *" See also, Note, Community Property: Property Settlement Agreements: Duty of Husband to Reveal Value of the Community Property, 50 Cal.L.Rev. 131; The Husband's Fiduciary Duty— More Protection for the California Wife, 14 Stanford L.Rev. 587.

In Beals v. Ares, 25 N.M. 459, 185 P. 780, the New Mexico Supreme Court stated:

" * * * here undoubtedly the husband secured a decided advantage over the wife in the transaction. It appears that he was the manager of the community property, as contemplated by the Code, and it is not shown that the wife had any knowledge as to the extent and value of the community property. So we may safely assume that at the time of the transaction in question the parties stood towards each other as trustee and beneficiary, the husband being the trustee, and the wife the cestui que trust, and upon this basis determine the validity of the contracts and deed in question.

" * * * [T]he following propositions may be accepted without question:

" * * *

"(2) That the duty devolved upon the husband to show * * * (b) full disclosure by him as to the rights of the wife and the value and extent of the community property * * *."

See also Linton v. Linton, 78 Idaho 355, 303 P.2d 905, where the fiduciary role of the husband resulting from his being manager of the community is recognized; Brownson v. New (Tex.Civ.App.), 259 S.W. 2d 277.[2]

Oklahoma has laid down the following rule in husband and wife partitions of property acquired during the marriage, in Brasier v. Brasier, 200 Okl. 689, 200 P.2d 427, and Key v. Key (Okl.), 388 P.2d 505:

"By reason of the special confidential or fiduciary relation existing between husband and wife the opportunity of one to take undue advantage over the other exists, and any course of dealing between them settling property rights preparatory to securing a divorce is to be carefully scrutinized, and the slightest trace of undue influence or unfair advantage justifies a court of equity in setting aside a contract purporting to settle property rights."

A Colorado case, United States Nat. Bank of Denver v. Bartges, 122 Colo. 546, 224 P.2d 658, involved a Kansas settlement, and the Colorado court said of the law of Kansas, where spouses own jointly property acquired during the marriage:

" * * * in the consummation of [the] division of property, the law of Kansas requires the husband to exercise the utmost good faith and to make full disclosure of all material facts, including his circumstances, and any other fact which might affect the terms of the contract. * * * "

With these principles of law in mind we shall now discuss the facts relative to the partition which the wife here seeks to have set aside.

The act of partition does not set forth the total value of the community or the values of any of the items composing it. In the act the wife received one tract of land and certain movables including beds, furniture, radios, televisions, etc., situated within a motel which was subsequently shown to be located on the tract she received. In the act the husband obligated himself to provide her with a 1962 Ford Galaxie automobile, and subsequently did so. As the husband's share the act described 16 separate tracts of land and also gave him "All accounts receivable, notes receivable, bank accounts, good will, stocks, bonds, all movable property, furniture, cattle and horses, formerly belonging to the community of acquets and gains between Elin Pitre and Effie Ardoin * * * ". In the act the husband assumed all indebtedness outstanding against the community, and also assumed all contingent liability to various finance companies on notes which

2. Some courts have found it significant and important that the wife did not have independent legal representation in the settlement. See Key v. Key (Okl.), 388 P.2d 505; Beals v. Ares, 25 N.M. 459, 185 P. 780; Primus v. Clark, 48 N.M. 240, 149 P.2d 535; Cornell v. Cornell, 57 N.M. 380, 258 P.2d 1143.

he had signed as surety for more than $400,000.00. The amount of this contingent liability is the only figure of either assets or liabilities given in the act of partition.

The Court of Appeal affirmed a finding by the trial court that the net value of the community property was $228,398.00. Under this finding the wife's half of the net community would be $114,199.00. There is no serious dispute that the property she received had a value of $78,600.00. It will thus be seen that according to both lower courts she received approximately $35,000.-00 less than she was entitled to as her half of the community, and the husband received assets of $149,798.00, about $71,000.00 more than she received, or almost twice as much as she received.

Among the properties received by the husband under the omnibus clause in the partition, quoted above, was Pitre Ford Company, which he was operating under a Ford franchise dealership. Evidence adduced at the trial showed that this was a profitable business which had been in existence for about 13 years. Relator-defendant contends that the net value placed on this business by the courts was too high. We think the value of this business as found by the courts below was most favorable to the defendant, especially in view of the fact, as pointed out by the Court of Appeal, that all cars, parts, etc., were car-

ried at cost less depreciation and that there was no value allowed for the good will of the business or for the Ford franchise dealership. Although the plaintiff did not prove the value of these two latter assets, we, like the Court of Appeal, think that they had a substantial value. Moreover, both courts found that this business had a book value in excess of $80,000.00, on the basis of financial statements which defendant's bookkeeper testified allowed for depreciation and were realistic. The courts, however, were generous to the defendant and took 50 per cent of this figure to find that the market value of the business was $40,000.00.

With possibly one exception, the contentions of error urged by relator here were urged in the Court of Appeal, and were aimed at the method employed by the district court to determine the net value of the community. The Court of Appeal found these allegations of error to be without merit. We agree with its findings on these matters, and shall not discuss them here. On application for rehearing in the Court of Appeal the defendant argued for the first time that the Court of Appeal and the district court fell into error when they allowed as a liability of the community only 2 per cent of the total contingent liability and failed to take into account that the reserve fund for contingent liabilities was carried as an asset on the financial statement of

Pitre Ford Company.[3] If this in fact was an accounting error, which is doubtful, and is accepted as such, the property received by the wife in the act of partition would still be much less than one-half of the net community. Consequently, even if there were error in the courts' method of computation, it was immaterial under our view of the case.

The husband is still contending in this court that his assumption of the contingent liabilities greatly reduced the value of the property which he took as his share of the community in the partition.

The contingent liabilities were the result of notes secured by mortgages on motor vehicles sold by Pitre Ford, endorsed with recourse by Pitre and conveyed to various credit concerns engaged in purchasing paper of this nature. Most of the finance companies purchasing such paper required the establishment of a reserve fund of from 3 to 4 per cent of the finance charges to take care of repossession and contingent liabilities of the automobile dealer selling the negotiable paper. The proof in this case clearly establishes that on the basis of the experience of Pitre and other automobile dealers in the area the potential risk on such recourse paper making up the contingent liabilities is very small in comparison with the total face amount of the paper

endorsed. The manager of one of the commercial credit companies with which Pitre had in excess of $200,000.00 in recourse paper testified that as a result of this reserve Pitre about broke even. A Chevrolet-Buick dealer, one of the defendant's witnesses, testified that he had been in the automobile business for 32 years, that his reserve had always more than taken care of his losses, and that there was not a year in which he had not recovered part of the reserve fund. Another Chevrolet dealer testified that he had been selling automobiles for 34 years, that a reserve fund of around 3½ per cent was set up for his recourse paper, and that the maximum he had ever lost, even in depression years, was 2 or 3 per cent.

It is evident to us from the testimony of these experienced automobile dealers and managers of commercial houses buying paper of this type that the potential risk resulting from an automobile dealer's endorsement of such paper is relatively small. Moreover, Pitre himself has not shown in this case that his losses ever exceeded the reserve set up for him by the various finance companies.

■ A study of the record shows to our entire satisfaction that the property received by the wife was much less than one-half of the total net community.

---

3. Our principal reason for granting the writ in this case was to consider this alleged error. Such consideration is now unnecessary for the reason stated.

Plaintiff, a housewife with a very limited education and relatively inexperienced in business and business matters, was without the benefit of independent counsel in the partition of this large and complex community. Her husband's attorney prepared the act of partition. She testified that she did not have counsel because she trusted her husband and relied on him to deal fairly with her, and because he had suggested that they not incur additional attorney's fees. No effort was made to apprise her of the value of any of the property being partitioned or the net value of the community, and these values could not be ascertained from the act of partition itself. She was never informed of the value of any stocks owned[4] or the amount of any bank balance, all of which were acquired by the husband with all other movables under the omnibus clause of the partition.

In the partition with his wife Pitre's contingent liability was stressed by its being the only item for which an amount was given. He informed his wife that this liability resulted from his endorsement of notes to banks and finance companies, but failed to explain to her that his loss as a result of these endorsements was nominal or insignificant; and according to her testimony she was impressed by the large total sum of the outstanding recourse paper. Her testimony as well as that of the defendant makes clear that what was emphasized to her was not the value of the community so that she could intelligently determine whether she was getting her fair share, but was the great contingent indebtedness of the community assumed by the husband, stated in the act of partition to be in "excess of $400,000.00". She was never informed of that indebtedness in terms of its potential risk, and with her limited business experience she was fearful of being responsible for such a large sum.

The motel which the wife received in the partition had, according to income tax returns, been operating at a loss, a loss of $2000.00 in 1960 and $4500.00 in 1961. She did not know this, and her husband, who of course did know it, did not tell her. In fact, Mrs. Pitre stated that her husband told her she could clear between $600.00 and $700.00 a month by operating the motel, whereas in actual fact it has continued to operate at a loss since she received it in the partition.

The husband, on the other hand, received the Pitre Ford agency, which according to income tax returns showed a profit of more than $23,000.00 in 1960 and of more than $14,500.00 in 1961. In addition he derived rental income from some of the properties which he received in the partition—$125.00 a month from a barber shop, $75.00 and $50.00 monthly from houses—,

---

4. Two days before the partition the husband sold for $55,000.00 some of the stock he was to acquire in this act.

and also received a small royalty on gasoline sales from a leased service station.

In short, the wife received a business property which was losing money, and the husband received income-producing property, particularly the Ford company which was being operated at a profit.

■ The husband in this case breached the fiduciary duty which he owed his wife by not making a full disclosure of all pertinent facts regarding the community assets and liabilities. Specifically, he failed to disclose to her that the potential risk of the contingent liabilities was relatively small, a material fact she was entitled to know. In addition, he failed to disclose the true financial condition of the unprofitable motel and led his wife to believe that she could clear a substantial income from it each month. Because of his breach of his fiduciary duty a partition was consummated which resulted in great advantage to him and great prejudice to his wife; and this partition must be set aside.

For the reasons assigned the judgment of the Court of Appeal which affirmed the judgment of the district court setting aside the partition is affirmed. Relator is to pay all costs.

FOURNET, Chief Justice (concurring).

I fully concur with the holding of the majority that inasmuch as this litigation involves a partition of the community formerly existing between the plaintiff (wife) and defendant (husband), he, by virtue of his superior position during the community, stood in a fidiuary relationship to his wife and owed "to her the duty of full disclosure of the community property and its value." He could not, therefore, with impunity, conceal from her or misrepresent to her any material fact upon which she had a right to rely.

The majority finds as a fact the wife here was of "very limited education," "relatively inexperienced in business and business matters," and "without the benefit of independent counsel in the partition" proceeding, trusting her husband and relying "on him to deal fairly with her." For this reason, no effort was made to have the community property appraised independently, or its true value ascertained and told to her. As a result, she accepted and received as her share of the community in the partition proceeding property valued at $78,600, included in which was a motel valued at some $75,000, on her husband's representation she could clear between $600 and $700 a month from its operation, although it had, in fact, been operated at a loss of $2,000 in 1960 and of $4,500 in 1961 (the year in which the partition occurred), while her husband received other properties that were not only more valuable, but also revenue producing.

Under these facts, I concur in the decree.